1    **IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO**

2

- - - - - - - - - - - - - - - - - - - x

3                                         :

JENNIE LINN MCCORMACK, on behalf of      :   Case No. CV11-397-E-BLW

4    herself and those similarly situated, :
and in the interests of the general      :

5    public,                              :   **MOTION HEARING**

6                         Plaintiff,       :
                                          :

7              vs.                         :
                                          :

8    MARK L. HIEDEMAN, Bannock County      :
Prosecuting Attorney,                     :

9                                         :
                         Defendant.       :

10   - - - - - - - - - - - - - - - - - - - x

11

12

13

14

15   <u>REPORTER'S TRANSCRIPT OF PROCEEDINGS</u>

16   before B. Lynn Winmill, Chief District Judge

17

18   September 9, 2011

19

20   Pages 1 to 42

21

22

23               **Tamara I. Hohenleitner**
         Idaho Certified Shorthand Reporter No. 619

24            Registered Professional Reporter
                Certified Realtime Reporter

25          Federal Certified Realtime Reporter

         United States Courts, District of Idaho
     550 West Fort Street, Boise, Idaho  83724  (208) 334-1500

1                           A P P E A R A N C E S

2

3        FOR THE PLAINTIFF

4              Richard Avery Hearn
               John B. Ingelstrom
5              RACINE, OLSON, NYE, BUDGE & BAILEY, CHTD.
               PO Box 1391
6              Pocatello, ID 83204-1391
               Tel: (208) 232-6101
7              Fax: (208) 232-6109
               E-Mail: Rah@racinelaw.net
8                       Jbi@racinelaw.net

9

10

11

       FOR THE DEFENDANT
12
               Clay Riggins Smith
13             Steven Lamar Olsen
               OFFICE OF THE ATTORNEY GENERAL
14             PO Box 83720
               Boise, ID 83720-0010
15             Tel: (208) 334-4118
               Fax: (208) 854-8073
16             E-Mail: Clay.smith@ag.idaho.gov
                       Steve.olsen@ag.idaho.gov
17

18

19

20

21

22

23

24

25

3

1

<u>I N D E X</u>

2

**PAGE**

3

Argument by Mr. Hearn.......................... 8
Argument by Mr. Smith.......................... 27
Court takes under advisement.................. 40

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1   P R O C E E D I N G S
2   September 9, 2011
3       THE CLERK:  The court will now hear the
4   motion hearing in Case No. 11-397, Mccormack
5   versus Hiedeman.
6       THE COURT:  Good morning, Counsel.  I
7   appreciate your willingness to accommodate this
8   change.  It was scheduled for a hearing in Boise,
9   but since it was an eastern Idaho case, we try to
10  have all the hearings here wherever possible.  And
11  plus, with my schedule, this was the earliest and
12  best time since we're, as you can see from the
13  chairs here in the courtroom, picking a jury here
14  in about 55 minutes.
15      Let me indicate that I have reviewed
16  the briefing in this matter.  Of course, it was
17  put together on fairly short notice given the
18  nature of the proceedings.  So depending upon the
19  outcome of the hearing, we may end up revisiting
20  this -- well, we probably will be revisiting this
21  at some point in the near future.
22      Let me make a couple of just general
23  observations about the, I guess, problems I see
24  with both sides' arguments and things that we need
25  to address.  First, it appears -- and I guess I

5

1   always say Mr. Hearn, but it's Dr. Hearn, but
2   since you're in a courtroom, I'm going to call you
3   Mr. Hearn.  My apologies.  I don't -- it's too
4   hard to keep people's titles straight so you'll
5   have to accept my apology for that.
6       MR. HEARN:  That's all right, Your Honor.
7       THE COURT:  My sense is that the plaintiffs
8   are really seeking to enjoin the enforcement of
9   two aspects of the state statute:
10      One, having to do with the requirement
11  that an abortion can only be performed by a
12  physician and that a woman, by the very terms of
13  the statute, can be prosecuted for attempting to
14  have an abortion under any other circumstance,
15  which would include taking medication that
16  apparently is readily available on the Internet
17  and which can induce an abortion.  That's one
18  aspect.
19      And, of course, the argument is that,
20  particularly in an area where no other abortion
21  providers are available and a woman is indigent,
22  her inability to utilize that process impinges
23  upon her rights under the Fourteenth Amendment to
24  a therapeutical -- to have an abortion.
25      The second aspect is that provision of

6

1   the statute which requires that an abortion be
2   conducted by a physician under certain
3   circumstances which would include being performed
4   at a hospital setting, which -- and places
5   criminal responsibility on the woman if the doctor
6   does not comply with the statute.
7       So, now, first of all, I want to make
8   sure that -- I want counsel to tell me immediately
9   where I'm wrong as to whether or not that's the
10  two types of relief that's been sought.
11      With regard to the -- well, to that,
12  then, the state has suggested that the Younger
13  abstention doctrine applies because the criminal
14  proceeding here was pending and was dismissed
15  orally on the same date that this action was
16  filed, but that it was not actually dismissed by
17  the trial judge in state court until just a few
18  days ago and that that means that the case was
19  actually still pending.
20      Well, I've got to tell you:  I don't
21  find a lot of substance to that argument.  I make
22  oral announcements and make oral decisions from
23  the bench, and those are decisions of the court.
24  Sometimes they're incorporated in a minute entry.
25  Sometimes I indicate that I may follow up with a

7

1   written decision.  But if the judge indicates that
2   the complaint will be dismissed, it seems to me
3   that that's the end of that.
4       Moreover, even if there is some
5   technical paperwork that needs to be completed, I
6   think it is form over substance to suggest that
7   the plaintiff is hog-tied, so to speak, by the
8   state's -- state judge's inaction in not entering
9   the order.  How are they to know, once the judge
10  orally pronounces that the case is dismissed, that
11  there still needs to be paperwork done?  And what
12  we would then create is the oddity that Mr. Hearn
13  would simply have to turn around and, presumably,
14  today now could refile the very same complaint
15  because -- now, after the state trial judge has
16  issued his written decision, then we can proceed
17  forward.  I just think that is the type of
18  legality that, clearly, the Younger doctrine
19  cannot be intended to apply to.
20      Now, the other question I've got goes
21  back to the plaintiff, and that's the question of
22  standing.  My concern is that the plaintiff's
23  affidavit indicates that she does not have -- that
24  there are no healthcare providers in eastern Idaho
25  who will provide an abortion, that the counselors

8

1  locally -- family planning counselors locally
2  would refer their patients to -- Salt Lake City is
3  the closest place where, of course, the Idaho
4  statute would not apply.  She has indicated she
5  cannot afford to pay for such an abortion nor can
6  she presumably afford to go to Salt Lake to have
7  it performed.  The problem is that clearly gives
8  standing for the first of the two challenges that
9  I have described earlier; that is, challenge to
10  the requirement that she use a physician at all.
11        But I'm concerned that -- you know,
12  what the Lord gives, the Lord takes away -- that
13  you have the effect by making those same
14  allegations in the affidavit, you pretty clearly
15  say that you perhaps don't have standing to
16  challenge the requirement in the statute that if
17  you have an abortion, the woman can be charged
18  criminally if the doctor does not perform it in
19  accordance with the statute.  And so that's my
20  concern: That you may not have standing to pursue
21  at least one of those claims, although at first
22  blush, it appears to me that there clearly is
23  standing as to the first.
24        So I think I have rattled on long
25  enough.  Those are my three concerns.  One is why

9

1  should the Younger abstention doctrine apply under
2  these unique circumstances.  And what I'm going to
3  be expecting the state to show me is a case where
4  the Younger abstention doctrine was applied where
5  a state court orally dismissed an action even
6  though there was still paperwork to be completed.
7  What I need to hear I think from the plaintiff is:
8  How do you deal with the standing problem since
9  you have taken kind of a two-pronged approach and
10  you're seeking relief under two aspects of the
11  statute?
12        So, Mr. Hearn or Mr. Ingelstrom, I
13  don't know who is arguing but --
14        MR. HEARN:  Thank you, Your Honor.
15        Jennie Mccormack didn't just wake up
16  one morning last year and decide to make a
17  constitutional challenge to Idaho's abortion laws.
18  No.  She woke up and found herself pregnant.  As a
19  single, unemployed mother of three, Jennie also
20  found herself without the means to travel to the
21  nearest provider of abortion services.  Although
22  there were and still are no abortion providers
23  located in southeast Idaho, Jennie discovered
24  providers of abortions -- medical abortions, not
25  surgical abortions -- advertising their medical

10

1  services over the Internet.  If Jennie had wanted
2  to exercise her constitutional right to choose to
3  have an abortion, she would have had no real
4  choice but to seek her abortion from one of these
5  Internet advertising providers.
6        Shortly after she delivered the fetus
7  at home in Bannock County, Jennie was arrested and
8  charged by the defendant with having an unlawful
9  abortion.  On August 24th, those charges were
10  dismissed without prejudice at the preliminary
11  hearing.
12        Fearing that she would be recharged by
13  the defendant, Jennie filed this federal suit to
14  enjoin the defendant from recharging her for
15  having an unlawful abortion.  The defendant in
16  this case has affirmed in its declaration that he
17  is actually considering recharging Jennie if he is
18  not enjoined by this court.
19        While Jennie cannot describe what
20  caused the fetus to be delivered in late December
21  of 2010, because of her fears that those
22  statements would be used against her in a future
23  criminal prosecution, she has filed an affidavit
24  stating that because there are no providers in
25  southeast Idaho, she would, if pregnant, seek

11

1  another abortion from a provider over the Internet
2  in Bannock County.  Jennie cannot and does not
3  know if she would be sent to jail if she exercised
4  that right to have an abortion by taking
5  medication in Bannock County.  If she would not be
6  sent to jail, if that fear can be alleviated, she
7  would like to have such an abortion.
8        Standing:  "A plaintiff has
9  standing" -- this is from Planned Parenthood
10  versus Wasden, the Ninth Circuit case out of
11  Idaho, "Article III standing: When he can allege
12  an 'actual or imminent,' 'concrete and
13  particularized' 'injury in fact,' causally
14  connected to the defendants' conduct, that will
15  'likely' (and not 'merely speculative[ly]) be
16  redressed by a favorable judgment."
17        If the defendant, which is not the
18  State of Idaho -- it's only Mr. Hiedeman, the
19  prosecutor -- if he is not enjoined, then she
20  faces an actual or imminent threat that she will
21  be recharged and tried, which is causally
22  connected to his conduct, and this is not
23  speculative in that he has filed an affidavit
24  saying that he is considering doing that, and that
25  conduct would be redressed by a favorable judgment

## 12

1 here. That's for her past conduct.
2         For her future conduct, the same would
3 apply. Mr. Hiedeman has not suggested in any way
4 that he wouldn't apply this statute, 18-608, to
5 Jennie for future conduct or other women for
6 future conduct.
7         Whether considered as a facial
8 challenge or as applied, Mccormack meets the
9 requirements of standing. We are asking for the
10 TRO based upon a facial challenge that this
11 statute is unconstitutional as applied to Jennie
12 or anyone else. Now, that statute we're talking
13 about is 18-606 which criminalizes women -- not
14 their doctors, but the women -- for seeking an
15 abortion from a doctor who has not met all of the
16 criteria in -- actually, 608, 18-608.
17         If the court were to turn that down or
18 refuse it, then we ask the court to consider her
19 challenge as applied challenge to her in her
20 circumstances of being poor and seeking a
21 previability abortion in southeast Idaho.
22         The defendant has asked this court to
23 refuse to hear Jennie's case based upon the
24 Younger abstention doctrine. The Younger
25 abstention doctrine does require a federal court

## 13

1 to abstain from hearing a case for injunctive
2 declaratory relief while the state criminal
3 proceedings are ongoing.
4         "State proceedings are ongoing for
5 purposes of Younger abstention until the state
6 appellate review is complete." That is a quote
7 from the case cited by the attorney general in
8 Gilbertson versus Albright.
9         The state criminal charges against
10 Mccormack were dismissed by the magistrate in the
11 presence of the defendant and the attorney
12 general's client, the prosecutor, on August 24th.
13         In state court, the Idaho Supreme Court
14 has held that under Ruiz, "The state's only remedy
15 from a dismissal by a magistrate is to refile
16 another complaint with another magistrate." And
17 that's a quote from State versus Diaz, 117 Idaho
18 392, 1990. In Diaz, the Idaho Supreme Court
19 quoted its earlier opinion and rules to hold,
20 quote, "that, where the order of a magistrate was
21 an order granting a motion to dismiss a complaint"
22 -- that is actually the order gave by Judge
23 Carnaroli -- "the state may not appeal from that
24 order. Therefore, the magistrate's granting of
25 the motion to dismiss ended the appellate review

## 14

1 possibilities" because -- and there was no more
2 proceedings possible under the charges.
3         Mccormack's constitutional challenge to
4 Idaho's abortion law can be either facial or as
5 applied. And I recognize that those issues are
6 complicated, not only for me, but in the
7 literature.
8         And I would like to cite Fallon --
9 Richard Fallon's definition of the difference from
10 "Hart and Wechsler's The Federal Courts and The
11 Federal System" from 2003. He states, quote,
12 "Facial challenge occurs when a party claims that
13 a statute fails an applicable constitutional test
14 and should be deemed invalid in all applications.
15 But, by contrast, third-party standing cases arise
16 when one party maintains that a government action
17 simultaneously harms her, the first party, and
18 violates the rights of specifically identifiable
19 third parties."
20         It's important to point out that the
21 standard case after Roe v. Wade has been
22 third-party standing such as Planned Parenthood
23 and Dr. Weyhrich saying they were hurt by certain
24 laws here in Idaho and seeking standing to
25 represent, and being granted standing both by the

## 15

1 District Court and the Ninth Circuit, to represent
2 their patients.
3         That is not the issue for Jennie
4 Mccormack. She is the person who has the
5 constitutional right at issue.
6         THE COURT: Are you seeking class
7 certification under 23(b)(2)?
8         MR. HEARN: We are in the complaint but --
9         THE COURT: Not for purposes of the TRO.
10         MR. HEARN: No, no.
11         THE COURT: All right.
12         MR. HEARN: So the as-applied challenges for
13 Jennie Mccormack only either facially or through
14 third-party standing to represent similarly
15 situated women through third-party standing, not
16 class certification, the same way Dr.
17 Weyhrich who represented women in front of the --
18 this court, I guess, ten years ago.
19         So Mccormack -- Planned Parenthood
20 versus Casey held that a facial challenge, our
21 primary argument today, to an abortion statute
22 will succeed where, in a large fraction of the
23 cases in which the statute is relevant, it will
24 operate as a substantial obstacle to a woman's
25 choice to undergo an abortion; that is, the fact

16

1 that the statute is susceptible to some
2 constitutional application will not save it from
3 facial attack. Rather, we must be satisfied that
4 it will pose an undue burden in only a small
5 fraction of relevant cases. And, of course, that
6 cites Planned Parenthood versus Wasden.
7       THE COURT: What is that citation from?
8       MR. HEARN: Planned Parenthood versus
9 Wasden, Ninth Circuit, and then it cites to Casey
10 for that. But the page is 920-921, 376 F.3d. 908,
11 920-21.
12       THE COURT: Okay.
13       MR. HEARN: Okay. The fact that the
14 Idaho -- okay.
15       Now, earlier the court mentioned about
16 standing. We amended our motion for the TRO,
17 admittedly late, and the state has not had,
18 really, a full opportunity to respond by asking,
19 also, that Chapter 5 having to do with fetal pain
20 be enjoined, as well, and filed those motions
21 about 24 to 36 hours ago. Okay? That amended
22 motion. And so there would be a question of how
23 we have standing to pursue that, and so I need to
24 briefly mention that the standing for that is
25 based upon a facial challenge based upon the

17

1 purpose of that statute.
2       The fact that the Idaho legislature
3 passed and the governor signed the Pain-Capable
4 Unborn Child Protection Act within weeks of
5 receiving the opinion of these lawyers from the
6 Attorney General's Office that the statute was
7 likely unconstitutional as applied to previability
8 abortions is evidence that the purpose of that act
9 was to, quote, "place a substantial obstacle in
10 the path of a woman seeking an abortion.
11       In Mazurek versus Armstrong, 1997 case
12 cited by the -- I'll call them the state but by
13 Mr. Hiedeman -- the majority and dissent in that
14 U.S. Supreme Court case agreed that if there is
15 evidence at the trial court that the purpose of a
16 statute is to place a substantial obstacle in the
17 path of a woman seeking an abortion, that statute
18 is unconstitutional on its face. In Mazurek
19 versus Armstrong, the majority found lack of
20 evidence at the District Court. They did not
21 have, at the District Court in that case, an
22 opinion sent to the legislature within weeks
23 before the legislature vote saying the statute is
24 unconstitutional.
25       In that case, the dissent cites the

18

1 U.S. Supreme Court case Miller versus Johnson
2 found holding -- that's a 1995 case -- that "such
3 a forbidden purpose may be gleaned, both from the
4 structure of the legislation and from examination
5 of the process that led to the enactment."
6       And here, Jennie Mccormack has -- is
7 asking that legislation as applied to her by
8 decreasing the number of abortion providers that
9 provide after-19-week abortions be restrained and
10 later enjoined because she has evidence, which has
11 been submitted to the court in an affidavit, that
12 the purpose of the legislature enacting that
13 controversial statute was to burden her right to
14 choose.
15       The fact -- now going to 606 -- the
16 fact that the defendant charged Mccormack under
17 606 for submitting to an abortion which was
18 allegedly unlawful solely because the provider had
19 not complied with all the requirements of 608 when
20 performing his abortion, had the effect -- not the
21 purpose but the effect -- of placing a substantial
22 obstacle in her path of seeking an abortion in the
23 future.
24       The defendant has offered no
25 explanation in its briefing, and maybe he can --

19

1 they can this morning --
2       THE COURT: Let me make sure I understand
3 exactly how it is that that creates a burden. Is
4 it because of the chilling effect on the woman who
5 is concerned that she may be prosecuted because
6 she is put in a position of being a guarantor that
7 the physician will, in fact, comply with the
8 statute? Or is it because the statute has created
9 such a chilling effect upon physicians that no
10 local healthcare provider is willing to provide an
11 abortion?
12       MR. HEARN: The former for 608. It has a
13 direct effect on Jennie and other women that if
14 they get an abortion here, they may go to jail for
15 five years if the provider missed something in
16 608.
17       THE COURT: But if that's the case, the
18 concern I've got goes back to the standing issue.
19       MR. HEARN: Yes.
20       THE COURT: The plaintiff's affidavit is
21 very clear that she has no intent to seek an
22 abortion in Idaho, or at least it's not -- the
23 indication as I read it was "I can't get an
24 abortion in Idaho because no doctor in eastern
25 Idaho is willing to provide it. I'm referred to

20

1  go to Utah if I'm going to have one." So that's
2  where -- that's the standing issue that I think I
3  have got to address if you're going to broaden the
4  claim to the 18-608 -- yeah -- 18-608 area, as
5  well as 18-606.
6      MR. HEARN: Yes, Your Honor. Jennie
7  Mccormack was charged -- let me address that
8  point. Jennie Mccormack was charged with having
9  an abortion in Bannock County. The only issue
10  for -- that the court was asked to decide in the
11  state court proceedings was whether the abortion
12  she had in Bannock County was legal or not.
13  Whether or not the provider who provided it was
14  licensed in Idaho -- there was no evidence whether
15  the provider was licensed in Idaho, whether or not
16  it was done in a hospital under 608, whether or
17  not it complied with any of the Idaho
18  requirements. But there was no -- there is no
19  debate. She was charged with having an abortion,
20  and she will have another abortion -- she would
21  like to -- in Bannock County, not go to Salt Lake
22  if this statute is enjoined.
23      THE COURT: But if there are no healthcare
24  providers in eastern Idaho who provide an abortion
25  and she has already, therefore, in her affidavit

21

1  said, "I'm going to go to Salt Lake," how does she
2  have standing unless she is arguing that the
3  effect of the statute is to preclude local
4  physicians from providing an abortion?
5      MR. HEARN: With due respect, I think you
6  misread it. She is not going and cannot go to
7  Salt Lake. She can get an abortion in Bannock
8  County by -- from a provider who is not locally
9  present in Bannock County. The way she does that
10  is by contacting a provider over the Internet, an
11  abortion provider to provide her with medication.
12  That abortion, according to the state, does then
13  occur in Bannock County. It occurs here. When
14  she ingests the pills that she gets from a
15  provider, either licensed or not licensed, in
16  Boise, Salt Lake, New York, wherever the provider
17  is located -- when she gets the pills and takes
18  them, the state's position for which she was
19  prosecuted is that constitutes submitting to an
20  abortion, and that is illegal because you weren't
21  in a hospital, under 608, or it wasn't a licensed
22  doctor, or whatever.
23      THE COURT: Okay. I guess I'm still --
24  maybe I'm slicing this too thin, but it strikes me
25  that what you're also asking is to enjoin the

22

1  application of the statute to women who choose to
2  go to a physician because of the potential
3  criminal prosecution if the doctor does not comply
4  with the statute.
5      MR. HEARN: Thank you, Your Honor.
6      THE COURT: My sense is that's not what we
7  have here.
8      MR. HEARN: She did go to a doctor.
9      THE COURT: Okay.
10      MR. HEARN: She went to a doctor the same
11  way men all over the state go to doctors to get
12  Viagra because they have privacy concerns. So she
13  went to a provider. There is no evidence whether
14  she went to -- whether that provider she went to
15  was a physician -- and that physician could be
16  licensed in Idaho, you don't -- not be a resident
17  here.
18      THE COURT: I think I have been operating
19  under a misassumption about the case, and it
20  probably is due to the fact that you've had to be
21  careful of what you've said in the affidavit
22  because of the potential prosecution. So I think
23  what you've now told me clarifies it a great deal.
24  So my sense is that she, in fact, says, "Yes, I
25  want to be able to go to a doctor other than the

23

1  circumstances provided by the statute." Is that
2  accurate?
3      MR. HEARN: Yes. That's it. And the only
4  doctor available in southeast Idaho is available
5  over the Internet and not physically located here,
6  but the abortion would be -- arguably occur here,
7  at least that's the state's contention.
8      THE COURT: I suppose that might raise
9  issues about the unauthorized practice of medicine
10  within the state and on and on. That's not before
11  us, so I'm not going to worry about that.
12      But the bottom line is, again, the
13  affidavit may not -- maybe I just read it wrong
14  because I had some base assumptions that were just
15  inaccurate, but the bottom line is she is arguing
16  that her intent in the future were she to become
17  pregnant and decide that she could not go forward
18  with the pregnancy would be to utilize a physician
19  but not in a manner prescribed by the statute and
20  that you're therefore requesting that the
21  application of the statute be enjoined both under
22  606 and 608.
23      MR. HEARN: Yes, Your Honor.
24      THE COURT: All right. Thank you. I think
25  that clarifies a great deal.

24

1    MR. HEARN: Now, I'd like to pick up on --
2    THE COURT: The problem is I have a jury
3  selection starting at 9:30, and I need to give
4  Mr. Smith a chance to respond so I'm going to ask
5  you maybe -- to give you five minutes to wrap
6  up --
7    MR. HEARN: I will. I want to point out
8  that we are not arguing in any way that the state
9  could not prosecute those providers over the
10 Internet if they don't meet those requirements for
11 having an abortion the U.S. Supreme Court has so
12 held, and those cases have been cited by the
13 Attorney General, but he cannot put the burden or
14 should not be able to put the burden on Jennie
15 Mccormack to figure out whether her doctor --
16 whether or not that doctor is physically located
17 in southeast Idaho or is on the Internet -- meets
18 all of those requirements. The state has adequate
19 resources to prosecute if it thinks that it's
20 criminal conduct, those providers.
21    Under the Unlicensed Practice of
22 Medicine Act, Your Honor, the state gives --
23 cannot prosecute the patients of those unlicensed
24 practitioners -- of those unlicensed people
25 practicing medicine. It actually gives a benefit,

25

1  allows those patients to sue those people. There
2  is no justification for the state to treat
3  pregnant women differently than it treats all
4  other patients. All other patients, it goes after
5  the doctor. The state has cited no case where any
6  state has -- any court has ever justified going
7  after the victim of the unlicensed practice of
8  medicine and trying to put them in jail for going
9  to the wrong doctor.
10    I'll skip over the arguments on
11 mootness and just briefly finish by going through
12 the requirements for a TRO. The court, I'm sure,
13 is familiar from both briefing of the standards so
14 the application of that standard to the facts.
15    Jennie is likely to succeed on the
16 merits or the serious questions going to the
17 merits. The Idaho general itself, these excellent
18 lawyers, have raised serious questions going to
19 the constitutionality of 18-608 and 18-505. As
20 the statutes Mccormack seeks to enforce must be
21 read in pari materia with 8-608 and 505, Mccormack
22 has met her burden to show that there are serious
23 questions which cannot be denied in these
24 statutes.
25    Most importantly, and my final point,

26

1  is the balance of hardship tips so sharply in the
2  plaintiff's favor, if the TRO is denied,
3  Your Honor, the defendant may recharge Mccormack
4  in the future and may also pursue her providers
5  for both criminally and civilly violating 18-505.
6  But if the TRO is denied, Mccormack must choose
7  between risking criminal prosecution for
8  submitting to an unlawful abortion or foregoing
9  her right -- and then, she will have a baby.
10    If the TRO is denied, the likelihood
11 that Mccormack will eventually have access to
12 providers physically in Idaho after 19 weeks will
13 significantly decrease as a direct result of
14 Chapter 5. If the TRO is granted, however, the
15 defendants can still prosecute Mccormack. They
16 just have to wait until this court determines at
17 the preliminary hearing in this matter whether the
18 statute will be enjoined. There is no harm. They
19 have -- five years is the statute of limitations,
20 so maybe -- got four more years to prosecute her.
21    THE COURT: We can take a long time to make
22 a decisions in federal court, though.
23    MR. HEARN: And they can go after her
24 providers. So there is absolutely no harm to the
25 state, and it is really not understandable to us

27

1  why they don't just agree to let this court do it
2  and remove the threat from prosecuting Jennie
3  during that time. Then they can -- after this
4  court decides -- and we'll be happy to move the
5  hearing on the merits as fast as possible to make
6  sure they have time to come after her if this
7  statute is upheld.
8    And the likelihood of irreparable harm
9  is paramount here. It's not even a comparison.
10 She, if pregnant, will have to have a baby, will
11 have to submit to the pregnancy, and will not be
12 able to exercise her choice to have an abortion in
13 southeast Idaho without risking being prosecuted
14 if this court denies her motion to enjoin the
15 state defendants.
16    THE COURT: Okay.
17    MR. HEARN: The public interest --
18    THE COURT: Counsel, I think I'm going to
19 have to cut you off.
20    MR. HEARN: I'm finished. I apologize,
21 Your Honor.
22    THE COURT: I have a jury waiting.
23    MR. HEARN: Thank you. Yes, Your Honor. I
24 apologize to you and to the state for taking too
25 much time.

28

1   THE COURT:  No problem.
2       Mr. Smith.
3   MR. SMITH:  May it please the court.
4   Steven Olson is seated at counsel table with me.
5       Your Honor, I recognize your time
6   exigency.  Let me just establish what I consider
7   to be the analytical framework for resolving this
8   particular motion.
9       First -- and it largely tracks with the
10  memorandum that we filed -- to the extent any
11  injunctive relief is granted, it can only be
12  granted to the plaintiff since this is a preclass
13  certification hearing.  That, of course, is the
14  Zepeda case.
15      And so the question then becomes,
16  really, for present purposes, whether this court,
17  under the likelihood-of-success prong, has
18  jurisdiction, either because of the application of
19  the Younger doctrine or because of the plaintiff's
20  arguable and, we think, fairly patent lack of
21  standing to raise the issues directed to
22  Chapter 6, as well as the issues raised to
23  Chapter 5.
24      With respect to Younger, we appreciate
25  the court's practical concern with the seeming

29

1   artificiality of requiring essentially --
2       THE COURT:  Who was the trial judge?  Was it
3   Judge Nye?  No.
4       MR. SMITH:  It was a magistrate.
5       MR. HEARN:  Carnaroli.
6       THE COURT:  All right.  Judge
7   Carnaroli has done nothing more than orally
8   announced dismissed.  Couldn't an appeal have been
9   taken from that decision?
10      MR. SMITH:  No, for the reasons that
11  Mr. Hearn has discussed.  What could have
12  happened, of course, is it could have been a
13  request for rehearing or reconsideration.
14      THE COURT:  Okay.  So what you want us to do
15  then is to dismiss on Younger abstention
16  principles and Mr. Hearn refile 30 seconds after I
17  orally pronounce that I'm dismissing the case
18  under a Younger --
19      MR. SMITH:  Your Honor, it's really not a
20  question of what the defendant prefers.  It's
21  really a question of what the Ninth Circuit
22  precedent and U.S. Supreme Court precedent --
23      THE COURT:  Did any of that precedent
24  involve a situation where the state trial judge
25  had dismissed the action?

30

1   MR. SMITH:  No, Your Honor.
2       THE COURT:  Do you have any case suggesting
3   that that's not adequate to allow the plaintiff to
4   go forward with an action like this?
5       MR. SMITH:  No.  We have no authority on
6   that point.
7       What we do have authority on the point
8   is that so long as the case is pending, and this
9   case was pending at the time this proceeding was
10  initiated.
11      THE COURT:  So if an appeal were filed by
12  the state, then they still can't file their
13  action?
14      MR. SMITH:  That's correct.  If an appeal
15  had been -- had been available, the action
16  obviously would have continued for the period of
17  time allowed for the appeal to be taken.
18      THE COURT:  And in the meantime, the state
19  is free to go ahead and refile criminal charges?
20      MR. SMITH:  That's correct.
21      THE COURT:  Because the federal court cannot
22  enjoin that action?
23      MR. SMITH:  That's correct.
24      But we raise this issue because it, in
25  fact, goes to jurisdiction because, as this court

31

1   is aware, once the various conditions of Younger
2   are satisfied, abstention is mandatory.  And the
3   defendant believes that the only issue in this
4   case is whether at the time, with respect to
5   Younger -- is at the time this action was
6   initiated before this court, there was in fact and
7   in law --
8       THE COURT:  Do you concede, though, that the
9   state court action has now been terminated as of,
10  what, 48 hours ago?
11      MR. SMITH:  That's correct.
12      THE COURT:  But an appeal could still be
13  brought even now; correct?
14      MR. SMITH:  No, Your Honor.  As I said --
15      THE COURT:  No appeals.  All right.
16      MR. SMITH:  As I said, there is no appeal
17  and, in fact, no appeal would be taken.
18      THE COURT:  So -- all right.
19      MR. SMITH:  Turning to the other
20  jurisdictional aspect, which is really the -- I
21  think, the concern the court has raised, it goes
22  to standing.
23      First, from the defendant's
24  perspective, there are essentially two issues
25  raised with respect to Chapter 6.  And the first

32

1 is what might be loosely characterized as a duty
2 to police on the part of the -- of the woman
3 undergoing the abortion; that is to say the
4 possibility that under 18-606 a woman might be
5 prosecuted for failing to ensure that her
6 physician did everything he or she was supposed to
7 do with reference to section 18-608.
8        606 indeed does impose a liability, but
9 it's liability imposed with a mens rea, which is
10 knowingly.  And in this instance -- and this goes
11 to standing -- we have to look at the facts that
12 underlie the claim which is, in essence, a
13 self-induced abortion, as we understand it, by the
14 plaintiff which involved no physician at all with
15 respect to the application of 608.
16        So in this instance, while it might be
17 conceivable that some other plaintiff or some
18 other woman might be faced with the situation of
19 trying to make a determination as to whether her
20 physician who was performing the abortion complied
21 with 608, that is not the situation we have here
22 because the plaintiff, so far as we can determine
23 from the sketchy affidavit that she filed, simply
24 decided to ignore the physician requirement.
25        And I appreciate the clarification that

33

1 counsel has offered during argument, but it's not
2 part of any of the evidence before this court.  It
3 is unclear even from his description whether a
4 physician was involved in, apparently, this
5 Internet transaction -- I say "apparently."  We
6 really don't know.  And we have no idea if it was
7 a physician --
8        THE COURT:  Well, we're looking
9 prospectively.  We're looking at what she intends
10 to do in the future, so regardless --
11        MR. SMITH:  Well -- and that brings me to
12 the other component of the standing issue.  The
13 plaintiff has no standing to raise a question of
14 compliance or noncompliance or constitutionality
15 or unconstitutionality of the statute with respect
16 to any future pregnancies.  There is, one, no
17 assurance there will be future pregnancies; two,
18 there is no assurance if there is a future
19 pregnancy --
20        THE COURT:  Are you suggesting that no woman
21 has standing unless she is pregnant?
22        MR. SMITH:  That's correct.  To challenge
23 this statute, that's correct.
24        THE COURT:  Okay.
25        MR. SMITH:  And if --

34

1        THE COURT:  Your authority for that?
2        MR. SMITH:  Well, the authority for that is,
3 for example, Roe, itself.
4        THE COURT:  What?
5        MR. SMITH:  The reason Roe was a class
6 action was because Ms. Roe's action would become
7 moot upon the termination or the fact that she
8 carried and gave birth to her child.  And at that
9 point, the only -- the only thing that would save
10 the case from mootness would be the fact that
11 there was class certification.  So the key is that
12 the lead plaintiff have standing as of the time
13 the class is certified.  In this instance, if we
14 had class certification today, the plaintiff would
15 probably not have standing to challenge certainly
16 the provisions of Chapter 5, so-called
17 Pain-Capable Unborn Child Protection Act, because
18 that act went into effect in April of last year,
19 after, as we understand it, her pregnancy
20 terminated.
21        But the more basic point is that the
22 plaintiff can base her standing to challenge
23 Chapter 5 -- excuse me -- Chapter 6 solely on the
24 basis of the facts attendant to her 2010
25 pregnancy.  Once that's recognized, it means a

35

1 couple of things:  First, any allegation directed
2 to Chapter 6 -- excuse me -- Chapter 5, which is
3 the Pain-Capable Unborn Child Protection Act, is
4 really not properly part of this proceeding today,
5 and perhaps ever, depending on class
6 certification; and two, with respect to her
7 challenge to 606 and 608, that we must measure her
8 standing with respect to that challenge on the
9 basis of the facts attendant to her 2010 pregnancy
10 and its termination.
11        So in this instance -- looking at the
12 first prong of her challenge to Chapter 6, which
13 is so-called duty to police, in this instance she
14 was never faced with that difficult duty because
15 she simply ignored the statute.  And she knew she
16 ignored the statute so far as we can determine
17 from the affidavit.  She made no attempt to have
18 an abortion in Idaho.  Needless to say, if she had
19 gone to Salt Lake for the abortion, the provisions
20 of the Idaho statute would not apply.
21        Now, with respect to her substantive
22 challenge to the various requirements of 608, if
23 you think about it logically, Your Honor, it's
24 really a question of severability in the sense
25 that even if you sever away every requirement in

36

1  608 but for the physician-only requirement, her
2  case still fails; that is to say, even if we
3  assume the unconstitutionality of other provisions
4  of 608, they could be severed, and the
5  statute -- the statute requirement for abortions
6  to be conducted by physicians would remain.
7  And there is no question, we would
8  suggest, either under Roe, under Menillo, or under
9  Mazurek v. Armstrong, the per curiam 1997 decision
10 that states may require all medical abortions to
11 be performed by a physician licensed in that
12 state.  And the -- I use the term "medical" to
13 include any form of abortion other than what might
14 be called a "therapeutic abortion," that is to say
15 an abortion that is necessary to preserve the life
16 or well-being of the woman.
17 The -- given the status of the case law
18 on that point and given the unique facts of the
19 plaintiff's 2010 pregnancy and its termination,
20 she plainly has to establish that there is no
21 requirement -- there was no requirement, no
22 constitutional requirement for her to actually
23 have that abortion performed by a physician
24 licensed to practice medicine in this state.  That
25 is, on the merits, an untenable position.

37

1  But, again, you really don't have to
2  get to that essentially substantive determination
3  of the merits because, once again, she doesn't
4  have standing to challenge 608 because she really
5  made no attempt to use -- to secure a physician
6  abortion in this state.
7  So for the reasons we essentially set
8  out in our memorandum, we think that the
9  likelihood of success in this case is, to say the
10 least, remote, and that, for purposes of a
11 temporary restraining order, the plaintiff has not
12 met the likelihood-of-success burden.
13 With respect to harm, again, we're
14 talking about a temporary restraining order.
15 Although I suppose it's theoretically possible
16 that prosecution could be -- prosecution could be
17 reinitiated against her --
18 THE COURT:  Well, has Mr. Hiedeman indicated
19 that that's still an option he is considering?
20 MR. SMITH:  He has.  In paragraph 3 of his
21 declaration, his first declaration, he states that
22 his office will have to make a determination as to
23 whether new or additional evidence --
24 THE COURT:  Was the dismissal by Judge
25 Carnaroli done with the government's -- excuse

38

1  me -- with the state's acquiescence?
2  MR. SMITH:  No.  The state opposed the
3  motion to dismiss.
4  THE COURT:  So as far as we know, the state
5  is absolutely gung ho in pursuing this but for
6  Judge Carnaroli's decision to dismiss?
7  MR. SMITH:  Well, the state -- the county
8  prosecuting attorney, Hiedeman, is charged with
9  enforcing the law if he has facts which indicate
10 that the law has been violated.
11 THE COURT:  True.  But that's always the
12 case.  The fact, though, that is unique here is he
13 already has instituted criminal proceedings under
14 the statute and but for Judge Carnaroli's
15 dismissal, presumably the plaintiff here would
16 still be facing those criminal charges and perhaps
17 heading to trial.
18 MR. SMITH:  That's correct.
19 THE COURT:  So in terms of balancing the
20 hardships and the potential for irreparable
21 injury, is there even any question about that?
22 MR. SMITH:  We believe there is because,
23 first of all, there is no proceeding, and the
24 issue therefore becomes whether or not there is
25 any likelihood of her being reprosecuted.  And

39

1  while there is that possibility, at this point,
2  again, given the short duration of a TRO, the
3  likelihood of her being reprosecuted is minimal.
4  THE COURT:  But if, in fact, it's done,
5  you're going to -- if, in fact, he reinitiates the
6  prosecution, you will come back into court, again
7  argue Younger abstention so that the plaintiffs
8  have no opportunity to stop it.  Doesn't that make
9  the gravity of the situation rather dire for the
10 plaintiff?
11 MR. SMITH:  No, Your Honor.
12 THE COURT:  So you will waive the Younger
13 abstention argument if, in fact, the action is
14 reinstituted so that Mr. Hearn can come in and
15 challenge that after it's been filed?
16 MR. SMITH:  No, Your Honor.  First of all,
17 for Younger to apply in that instance, you would
18 have to dismiss this proceeding.  Although we
19 think that's appropriate --
20 THE COURT:  Say that again.
21 MR. SMITH:  For the Younger problem that you
22 raise, for that to be an issue, you would have to
23 dismiss this proceeding.
24 THE COURT:  I would have to dismiss this
25 proceeding?

40

1    MR. SMITH:  That's correct.  In other words,
2  if you conclude that --
3    THE COURT:  But that's -- so what you're
4  saying is if this action is pending, if the state
5  subsequently filed an action, then there would be
6  no Younger abstention issue.
7    MR. SMITH:  There wouldn't be a Younger
8  abstention issue.  What there would be would be a
9  question of whether this court can enjoin that
10  proceeding.
11    THE COURT:  We're just about where I have to
12  cut us off.  Just hypothetically speaking, if I
13  grant the motion under Younger principles and even
14  dismiss this action but invite the plaintiff to
15  refile immediately and indicate that I'm willing
16  to decide the TRO motion in the subsequently filed
17  action on the same briefing and argument that's
18  been submitted here, is there still a Younger
19  problem?
20    MR. SMITH:  No, Your Honor.  We raise
21  Younger because we view it to be a jurisdictional
22  issue.
23    THE COURT:  Okay.  All right.  I'll give you
24  a couple parting shots.
25    Unfortunately, Mr. Hearn, I'm not going

41

1  to be able to hear any reply because --
2    MR. SMITH:  Your Honor, I appreciate your
3  time limitations.  Unless you have further
4  questions --
5    THE COURT:  No.  That's fine.
6    Counsel, I'm not going to try to issue
7  a written decision.  There is -- this case has the
8  potential to have some significance.  I mean, I
9  can see some novel issues here that I'm not sure
10  have been addressed previously.  And in that
11  situation, I -- I want to go -- I don't want to go
12  slow, but I want to go cautiously.  So I want to
13  take a little bit of time and review the standing
14  issue, the Younger issue.  And again, I've only
15  had just a few days to really try to get up to
16  speed on this so I need just a little more time.
17  We will try very hard to have a decision out early
18  next week.  I guess we'll leave it at that and see
19  where we go from there.
20    All right.  Counsel, I appreciate the
21  argument and briefing that's been submitted.
22  We'll issue a written decision in due course.  I
23  don't think I need any additional briefing.  If we
24  -- as we're starting to write, if we see some
25  minor issue, I may give each party 24 hours to

42

1  address a particular issue that I think may not
2  have been addressed yet, but I don't see that at
3  this point.
4    MR. SMITH:  If I might, as a procedural
5  matter, the answer actually is due, I believe, the
6  middle of next week and --
7    THE COURT:  But that doesn't effect the TRO
8  proceeding.
9    MR. SMITH:  Excuse me?  It doesn't affect
10  the TRO, but I would alert to the court we will
11  likely be filing a motion for an extension of time
12  for, for example, 14 days beyond the issuance of
13  the court's decision on the TRO to respond to the
14  complaint.
15    THE COURT:  Well, try to work it out with
16  Mr. Hearn.  If not, file a motion.  Okay?
17    MR. SMITH:  All right.  Thank you.
18    THE COURT:  We'll be in recess.
19    (Proceedings concluded.)
20
21
22
23
24
25

**United States Courts, District of Idaho**

1          R E P O R T E R' S   C E R T I F I C A T E

2

3

4

5          I, Tamara I. Hohenleitner, Official

6   Court Reporter, State of Idaho, do hereby certify:

7          That I am the reporter who transcribed

8   the proceedings had in the above-entitled action

9   in machine shorthand and thereafter the same was

10  reduced into typewriting under my direct

11  supervision; and

12         That the foregoing transcript contains a

13  full, true, and accurate record of the proceedings

14  had in the above and foregoing cause.

15         IN WITNESS WHEREOF, I have hereunto set

16  my hand October 10, 2011.

17

18

19

20                           -s-
            Tamara I. Hohenleitner
21          Official Court Reporter
            CSR No. 619
22

23

24

25

**United States Courts, District of Idaho**

**'**

**'actual** [1] - 11:12
**'concrete** [1] - 11:12
**'injury** [1] - 11:13
**'likely'** [1] - 11:15
**'merely** [1] - 11:15

**1**

**11-397** [1] - 4:4
**117** [1] - 13:17
**18-505** [2] - 25:19, 26:5
**18-606** [3] - 12:13, 20:5, 32:4
**18-608** [6] - 12:4, 12:16, 20:4, 25:19, 32:7
**19** [1] - 26:12
**1990** [1] - 13:18
**1995** [1] - 18:2
**1997** [2] - 17:11, 36:9

**2**

**2003** [1] - 14:11
**2010** [4] - 10:21, 34:24, 35:9, 36:19
**2011** [1] - 4:2
**23(b)(2** [1] - 15:7
**24** [1] - 16:21
**24th** [2] - 10:9, 13:12

**3**

**3** [1] - 37:20
**30** [1] - 29:16
**36** [1] - 16:21
**376** [1] - 16:10
**392** [1] - 13:18

**4**

**48** [1] - 31:10

**5**

**5** [6] - 16:19, 26:14, 28:23, 34:16, 34:23, 35:2
**505** [1] - 25:21
**55** [1] - 4:14

**6**

**6** [5] - 28:22, 31:25, 34:23, 35:2, 35:12
**606** [5] - 18:15, 18:17, 23:22, 32:8, 35:7
**608** [14] - 12:16, 18:19, 19:12, 19:16, 20:16, 21:21, 23:22, 32:15, 32:21, 35:7, 35:22, 36:1, 36:4, 37:4

**8**

**8-608** [1] - 25:21

**9**

**9** [1] - 4:2
**908** [1] - 16:10
**920-21** [1] - 16:11
**920-921** [1] - 16:10
**9:30** [1] - 24:3

**A**

**able** [3] - 22:25, 24:14, 27:12
**abortion** [58] - 5:11, 5:14, 5:17, 5:20, 5:24, 6:1, 7:25, 8:5, 8:17, 9:17, 9:21, 9:22, 10:3, 10:4, 10:9, 10:15, 11:1, 11:4, 11:7, 12:15, 12:21, 14:4, 15:21, 15:25, 17:10, 17:17, 18:8, 18:17, 18:20, 18:22, 19:11, 19:14, 19:22, 19:24, 20:9, 20:11, 20:19, 20:20, 20:24, 21:4, 21:7, 21:11, 21:12, 21:20, 23:6, 24:11, 26:8, 27:12, 32:3, 32:13, 32:20, 35:18, 35:19, 36:13, 36:14, 36:15, 36:23, 37:6
**abortions** [7] - 9:24, 9:25, 17:8, 18:9, 36:5, 36:10
**absolutely** [2] - 26:24, 38:5
**abstain** [1] - 13:1
**abstention** [12] - 6:13, 9:1, 9:4, 12:24, 12:25, 13:5, 29:15,

**apologize** [2] - 27:20, 27:24
**apology** [1] - 5:5
**appeal** [8] - 13:23, 29:8, 30:11, 30:14, 30:17, 31:12, 31:16, 31:17
**appeals** [1] - 31:15
**appellate** [2] - 13:6, 13:25
**applicable** [1] - 14:13
**application** [6] - 16:2, 22:1, 23:21, 25:14, 28:18, 32:15
**applications** [1] - 14:14
**applied** [8] - 9:4, 12:8, 12:11, 12:19, 14:5, 15:12, 17:7, 18:7
**applies** [1] - 6:13
**apply** [7] - 7:19, 8:4, 9:1, 12:3, 12:4, 35:20, 39:17
**appreciate** [3] - 4:7, 28:24, 32:25
**approach** [1] - 9:9
**appropriate** [1] - 39:19
**April** [1] - 34:18
**area** [2] - 5:20, 20:4
**arguable** [1] - 28:20
**arguably** [1] - 23:6
**argue** [1] - 39:7
**arguing** [4] - 9:13, 21:2, 23:15, 24:8
**argument** [6] - 5:19, 6:21, 15:21, 33:1, 39:13, 40:17
**arguments** [2] - 4:24, 25:10
**arise** [1] - 14:15
**Armstrong** [3] - 17:11, 17:19, 36:9
**arrested** [1] - 10:7
**Article** [1] - 11:11
**artificiality** [1] - 29:1
**as-applied** [1] - 15:12
**aspect** [3] - 5:18, 5:25, 31:20
**aspects** [2] - 5:9, 9:10
**assume** [1] - 36:3
**assumptions** [1] - 23:14
**assurance** [2] - 33:17, 33:18
**attack** [1] - 16:3
**attempt** [2] - 35:17, 37:5
**attempting** [1] - 5:13
**attendant** [2] - 34:24,

35:9
**attorney** [3] - 13:7, 13:11, 38:8
**Attorney** [2] - 17:6, 24:13
**August** [2] - 10:9, 13:12
**authority** [4] - 30:5, 30:7, 34:1, 34:2
**available** [5] - 5:16, 5:21, 23:4, 30:15
**aware** [1] - 31:1

**B**

**baby** [2] - 26:9, 27:10
**balance** [1] - 26:1
**balancing** [1] - 38:19
**Bannock** [9] - 10:7, 11:2, 11:5, 20:9, 20:12, 20:21, 21:7, 21:9, 21:13
**base** [2] - 23:14, 34:22
**based** [4] - 12:10, 12:23, 16:25
**basic** [1] - 34:21
**basis** [2] - 34:24, 35:9
**become** [2] - 23:16, 34:6
**becomes** [2] - 28:15, 38:24
**believes** [1] - 31:3
**bench** [1] - 6:23
**benefit** [1] - 24:25
**best** [1] - 4:12
**between** [1] - 26:7
**birth** [1] - 34:8
**blush** [1] - 8:22
**Boise** [2] - 4:8, 21:16
**bottom** [2] - 23:12, 23:15
**briefing** [4] - 4:16, 18:25, 25:13, 40:17
**briefly** [2] - 16:24, 25:11
**brings** [1] - 33:11
**broaden** [1] - 20:3
**brought** [1] - 31:13
**burden** [7] - 16:4, 18:13, 19:3, 24:13, 24:14, 25:22, 37:12

**C**

**cannot** [9] - 7:19, 8:5, 10:19, 11:2, 21:6, 24:13, 24:23, 25:23, 30:21

**United States Courts, District of Idaho**

**Capable** [3] - 17:3, 34:17, 35:3
**careful** [1] - 22:21
**Carnaroli** [4] - 13:23, 29:5, 29:7, 37:25
**Carnaroli's** [2] - 38:6, 38:14
**carried** [1] - 34:8
**Case** [1] - 4:4
**case** [30] - 4:9, 6:18, 7:10, 9:3, 10:16, 11:10, 12:23, 13:1, 13:7, 14:21, 17:11, 17:14, 17:17, 17:25, 18:1, 18:2, 19:17, 22:19, 25:5, 28:14, 29:17, 30:2, 30:8, 30:9, 31:4, 34:10, 36:2, 36:17, 37:9, 38:12
**cases** [4] - 14:15, 15:23, 16:5, 24:12
**Casey** [2] - 15:20, 16:9
**causally** [2] - 11:13, 11:21
**caused** [1] - 10:20
**certain** [2] - 6:2, 14:23
**certainly** [1] - 34:15
**certification** [6] - 15:7, 15:16, 28:13, 34:11, 34:14, 35:6
**certified** [1] - 34:13
**chairs** [1] - 4:13
**challenge** [20] - 8:9, 8:16, 9:17, 12:8, 12:10, 12:19, 14:3, 14:12, 15:20, 16:25, 33:22, 34:15, 34:22, 35:7, 35:8, 35:12, 35:22, 37:4, 39:15
**challenges** [2] - 8:8, 15:12
**chance** [1] - 24:4
**change** [1] - 4:8
**Chapter** [11] - 16:19, 26:14, 28:22, 28:23, 31:25, 34:16, 34:23, 35:2, 35:12
**characterized** [1] - 32:1
**charged** [7] - 8:17, 10:8, 18:16, 20:7, 20:8, 20:19, 38:8
**charges** [5] - 10:9, 13:9, 14:2, 30:19, 38:16
**Child** [3] - 17:4, 34:17, 35:3
**child** [1] - 34:8
**chilling** [2] - 19:4,
19:9
**choice** [2] - 10:4, 15:25, 27:12
**choose** [4] - 10:2, 18:14, 22:1, 26:6
**Circuit** [4] - 11:10, 15:1, 16:9, 29:21
**circumstance** [1] - 5:14
**circumstances** [4] - 6:3, 9:2, 12:20, 23:1
**citation** [1] - 16:7
**cite** [1] - 14:8
**cited** [4] - 13:7, 17:12, 24:12, 25:5
**cites** [3] - 16:6, 16:9, 17:25
**City** [1] - 8:2
**civilly** [1] - 26:5
**claim** [2] - 20:4, 32:12
**claims** [2] - 8:21, 14:12
**clarification** [1] - 32:25
**clarifies** [2] - 22:23, 23:25
**class** [7] - 15:6, 15:16, 34:5, 34:11, 34:13, 34:14, 35:5
**clear** [1] - 19:21
**clearly** [4] - 7:18, 8:7, 8:14, 8:22
**CLERK** [1] - 4:3
**client** [1] - 13:12
**closest** [1] - 8:3
**comparison** [1] - 27:9
**complaint** [5] - 7:2, 7:14, 13:16, 13:21, 15:8
**complete** [1] - 13:6
**completed** [2] - 7:5, 9:6
**compliance** [1] - 33:14
**complicated** [1] - 14:6
**complied** [3] - 18:19, 20:17, 32:20
**comply** [2] - 6:6, 19:7, 22:3
**component** [1] - 33:12
**concede** [1] - 31:8
**conceivable** [1] - 32:17
**concern** [5] - 7:22, 8:20, 19:18, 28:25, 31:21
**concerned** [2] - 8:11, 19:5
**concerns** [2] - 8:25, 22:12
**conclude** [1] - 40:2
**conditions** [1] - 31:1
**conduct** [8] - 11:14, 11:22, 11:25, 12:1, 12:2, 12:5, 12:6, 24:20
**conducted** [2] - 6:2, 36:6
**connected** [2] - 11:14, 11:22
**consider** [2] - 12:18, 28:6
**considered** [1] - 12:7
**considering** [3] - 10:17, 11:24, 37:19
**constitutes** [1] - 21:19
**constitutional** [7] - 9:17, 10:2, 14:3, 14:13, 15:5, 16:2, 36:22
**constitutionality** [2] - 25:19, 33:14
**contacting** [1] - 21:10
**contention** [1] - 23:7
**continued** [1] - 30:16
**contrast** [1] - 14:15
**controversial** [1] - 18:13
**correct** [9] - 30:14, 30:20, 30:23, 31:11, 31:13, 33:22, 33:23, 38:18, 40:1
**Counsel** [2] - 4:6, 27:18
**counsel** [3] - 6:8, 28:4, 33:1
**counselors** [2] - 7:25, 8:1
**county** [1] - 38:7
**County** [9] - 10:7, 11:2, 11:5, 20:9, 20:12, 20:21, 21:8, 21:9, 21:13
**couple** [3] - 4:22, 35:1, 40:24
**course** [6] - 4:16, 5:19, 8:3, 16:5, 28:13, 29:12
**Court** [9] - 13:13, 13:18, 15:1, 17:14, 17:20, 17:21, 18:1, 24:11, 29:22
**court** [33] - 4:3, 6:17, 6:23, 9:5, 10:18, 12:17, 12:18, 12:22, 12:25, 13:13, 15:18, 16:15, 17:15, 18:11, 20:10, 20:11, 25:6, 25:12, 26:16, 26:22, 27:1, 27:4, 27:14,
28:3, 28:16, 30:21, 30:25, 31:6, 31:9, 31:21, 33:2, 39:6, 40:9
**court's** [1] - 28:25
**courtroom** [2] - 4:13, 5:2
**Courts** [1] - 14:10
**create** [1] - 7:12
**created** [1] - 19:8
**creates** [1] - 19:3
**criminal** [11] - 6:5, 6:13, 10:23, 13:2, 13:9, 22:3, 24:20, 26:7, 30:19, 38:13, 38:16
**criminalizes** [1] - 12:13
**criminally** [2] - 8:18, 26:5
**criteria** [1] - 12:16
**curiam** [1] - 36:9
**cut** [2] - 27:19, 40:12

**D**

**date** [1] - 6:15
**days** [1] - 6:18
**deal** [3] - 9:8, 22:23, 23:25
**debate** [1] - 20:19
**December** [1] - 10:20
**decide** [4] - 9:16, 20:10, 23:17, 40:16
**decided** [1] - 32:24
**decides** [1] - 27:4
**decision** [5] - 7:1, 7:16, 29:9, 36:9, 38:6
**decisions** [3] - 6:22, 6:23, 26:22
**declaration** [3] - 10:16, 37:21
**declaratory** [1] - 13:2
**decrease** [1] - 26:13
**decreasing** [1] - 18:8
**deemed** [1] - 14:14
**defendant** [12] - 10:8, 10:13, 10:14, 10:15, 11:17, 12:22, 13:11, 18:16, 18:24, 26:3, 29:20, 31:3
**defendant's** [1] - 31:23
**defendants** [2] - 26:15, 27:15
**defendants'** [1] - 11:14
**definition** [1] - 14:9
**delivered** [2] - 10:6, 10:20
**denied** [4] - 25:23, 26:2, 26:6, 26:10
**denies** [1] - 27:14
**describe** [1] - 10:19
**described** [1] - 8:9
**description** [1] - 33:3
**determination** [1] - 32:19, 37:2, 37:22
**determine** [2] - 32:22, 35:16
**determines** [1] - 26:16
**Diaz** [2] - 13:17, 13:18
**difference** [1] - 14:9
**differently** [1] - 25:3
**difficult** [1] - 35:14
**dire** [1] - 39:9
**direct** [2] - 19:13, 26:13
**directed** [2] - 28:21, 35:1
**discovered** [1] - 9:23
**discussed** [1] - 29:11
**dismiss** [9] - 13:21, 13:25, 29:15, 38:3, 38:6, 39:18, 39:23, 39:24, 40:14
**dismissal** [3] - 13:15, 37:24, 38:15
**dismissed** [9] - 6:14, 6:16, 7:2, 7:10, 9:5, 10:10, 13:10, 29:8, 29:25
**dismissing** [1] - 29:17
**dissent** [2] - 17:13, 17:25
**District** [3] - 15:1, 17:20, 17:21
**doctor** [14] - 6:5, 8:18, 12:15, 19:24, 21:22, 22:3, 22:8, 22:10, 22:25, 23:4, 24:15, 24:16, 25:5, 25:9
**doctors** [2] - 12:14, 22:11
**doctrine** [7] - 6:13, 7:18, 9:1, 9:4, 12:24, 12:25, 28:19
**done** [5] - 7:11, 20:16, 29:7, 37:25, 39:4
**down** [1] - 12:17
**Dr** [3] - 5:1, 14:23, 15:16
**due** [2] - 21:5, 22:20
**duration** [1] - 39:2
**during** [2] - 27:3, 33:1
**duty** [3] - 32:1, 35:13, 35:14

## E

earliest [1] - 4:11
eastern [4] - 4:9, 7:24, 19:24, 20:24
effect [8] - 8:13, 18:20, 18:21, 19:4, 19:9, 19:13, 21:3, 34:18
either [5] - 14:4, 15:13, 21:15, 28:18, 36:8
enacting [1] - 18:12
enactment [1] - 18:5
end [2] - 4:19, 7:3
ended [1] - 13:25
enforce [1] - 25:20
enforcement [1] - 5:8
enforcing [1] - 38:9
enjoin [6] - 5:8, 10:14, 21:25, 27:14, 30:22, 40:9
enjoined [7] - 10:18, 11:19, 16:20, 18:10, 20:22, 23:21, 26:18
ensure [1] - 32:5
entering [1] - 7:8
entry [1] - 6:24
essence [1] - 32:12
essentially [4] - 29:1, 31:24, 37:2, 37:7
establish [2] - 28:6, 36:20
eventually [1] - 26:11
evidence [8] - 17:8, 17:15, 17:20, 18:10, 20:14, 22:13, 33:2, 37:23
exactly [1] - 19:3
examination [1] - 18:4
example [1] - 34:3
excellent [1] - 25:17
excuse [2] - 34:23, 35:2, 37:25
exercise [2] - 10:2, 27:12
exercised [1] - 11:3
exigency [1] - 28:6
expecting [1] - 9:3
explanation [1] - 18:25
extent [1] - 28:10

## F

F.3d [1] - 16:10
face [1] - 17:18
faced [2] - 32:18, 35:14
faces [1] - 11:20
Facial [1] - 14:12
facial [6] - 12:7, 12:10, 14:4, 15:20, 16:3, 16:25
facially [1] - 15:13
facing [1] - 38:16
fact [18] - 11:13, 15:25, 16:13, 17:2, 18:15, 18:16, 19:7, 22:20, 22:24, 30:25, 31:6, 31:17, 34:7, 34:10, 38:12, 39:4, 39:5, 39:13
facts [6] - 25:14, 32:11, 34:24, 35:9, 36:18, 38:9
failing [1] - 32:5
fails [2] - 14:13, 36:2
fairly [4] - 4:17, 28:20
Fallon [1] - 14:8
Fallon's [1] - 14:8
familiar [1] - 25:13
family [1] - 8:1
far [3] - 32:22, 35:16, 38:4
fast [1] - 27:5
favor [1] - 26:2
favorable [2] - 11:16, 11:25
fear [1] - 11:6
Fearing [1] - 10:12
fears [1] - 10:21
Federal [2] - 14:10, 14:11
federal [4] - 10:13, 12:25, 26:22, 30:21
fetal [1] - 16:19
fetus [2] - 10:6, 10:20
few [1] - 6:17
figure [1] - 24:15
file [1] - 30:12
filed [11] - 6:16, 10:13, 10:23, 11:23, 16:20, 28:10, 30:11, 32:23, 39:15, 40:5, 40:16
final [1] - 25:25
finish [1] - 25:11
finished [1] - 27:20
first [9] - 6:7, 8:8, 8:21, 8:23, 14:17, 34:15, 35:12, 37:21, 38:23
First [5] - 4:25, 28:9, 31:23, 35:1, 39:16
five [3] - 19:15, 24:5, 26:19
follow [1] - 6:25
forbidden [1] - 18:3

foregoing [1] - 26:8
form [2] - 7:6, 36:13
former [1] - 19:12
forward [3] - 7:17, 23:17, 30:4
four [1] - 26:20
Fourteenth [1] - 5:23
fraction [2] - 15:22, 16:5
framework [1] - 28:7
free [1] - 30:19
front [1] - 15:17
full [1] - 16:18
future [12] - 4:21, 10:22, 12:2, 12:5, 12:6, 18:23, 23:16, 26:4, 33:10, 33:16, 33:17, 33:18

## G

General [1] - 24:13
general [3] - 4:22, 13:7, 25:17
general's [1] - 13:12
General's [1] - 17:6
Gilbertson [1] - 13:8
given [4] - 4:17, 36:17, 36:18, 39:2
gleaned [1] - 18:3
government [1] - 14:16
government's [1] - 37:25
governor [1] - 17:3
grant [1] - 40:13
granted [4] - 14:25, 26:14, 28:11, 28:12
granting [2] - 13:21, 13:24
gravity [1] - 39:9
great [1] - 22:23, 23:25
guarantor [1] - 19:6
guess [4] - 4:23, 4:25, 15:18, 21:23
gung [1] - 38:5

## H

happy [1] - 27:4
hard [1] - 5:4
hardship [1] - 26:1
hardships [1] - 38:20
harm [4] - 26:18, 26:24, 27:8, 37:13
harms [1] - 14:17
Hart [1] - 14:10

heading [1] - 38:17
healthcare [3] - 7:24, 19:10, 20:23
hear [3] - 4:3, 9:7, 12:23
hearing [8] - 4:4, 4:8, 4:19, 10:11, 13:1, 26:17, 27:5, 28:13
hearings [1] - 4:10
Hearn [9] - 5:1, 5:3, 7:12, 9:12, 29:11, 29:16, 39:14, 40:25
HEARN [23] - 5:6, 9:14, 15:8, 15:10, 15:12, 16:8, 16:13, 19:12, 19:19, 20:6, 21:5, 22:5, 22:8, 22:10, 23:3, 23:23, 24:1, 24:7, 26:23, 27:17, 27:20, 27:23, 29:5
held [3] - 13:14, 15:20, 24:12
herself [2] - 9:18, 9:20
Hiedeman [6] - 4:5, 11:18, 12:3, 17:13, 37:18, 38:8
ho [1] - 38:5
hog [1] - 7:7
hog-tied [1] - 7:7
hold [1] - 13:19
holding [1] - 18:2
home [1] - 10:7
hospital [3] - 6:4, 20:16, 21:21
hours [2] - 16:21, 31:10
hurt [1] - 14:23
hypothetically [1] - 40:12

## I

Idaho [29] - 4:9, 7:24, 8:3, 9:23, 10:25, 11:11, 11:18, 12:21, 13:13, 13:17, 13:18, 14:24, 16:14, 17:2, 19:22, 19:24, 19:25, 20:14, 20:15, 20:17, 20:24, 22:16, 23:4, 24:17, 25:17, 26:12, 27:13, 35:18, 35:20
Idaho's [2] - 9:17, 14:4
idea [1] - 33:6
identifiable [1] - 14:18
ignore [1] - 32:24
ignored [2] - 35:15, 35:16

lll [1] - 11:11
illegal [1] - 21:20
immediately [2] - 6:8, 40:15
imminent [2] - 11:12, 11:20
impinges [1] - 5:22
important [1] - 14:20
importantly [1] - 25:25
impose [1] - 32:8
imposed [1] - 32:9
inability [1] - 5:22
inaccurate [1] - 23:15
inaction [1] - 7:8
include [3] - 5:15, 6:3, 36:13
incorporated [1] - 6:24
indeed [1] - 32:8
indicate [4] - 4:15, 6:25, 38:9, 40:15
indicated [2] - 8:4, 37:18
indicates [2] - 7:1, 7:23
indication [1] - 19:23
indigent [1] - 5:21
induce [1] - 5:17
induced [1] - 32:13
Ingelstrom [1] - 9:12
ingests [1] - 21:14
initiated [2] - 30:10, 31:6
injunctive [2] - 13:1, 28:11
injury [1] - 38:21
instance [6] - 32:10, 32:16, 34:13, 35:11, 35:13, 39:17
instituted [1] - 38:13
intended [1] - 7:19
intends [1] - 33:9
intent [2] - 19:21, 23:16
interest [1] - 27:17
Internet [9] - 5:16, 10:1, 10:5, 11:1, 21:10, 23:5, 24:10, 24:17, 33:5
invalid [1] - 14:14
invite [1] - 40:14
involve [1] - 29:24
involved [2] - 32:14, 33:4
irreparable [2] - 27:8, 38:20
issue [13] - 15:3, 15:5, 19:18, 20:2, 20:9, 30:24, 31:3, 33:12, 38:24, 39:22, 40:6,

40:8, 40:22
**issued** [1] - 7:16
**issues** [5] - 14:5, 23:9, 28:21, 28:22, 31:24
**itself** [2] - 25:17, 34:3

## J

**jail** [4] - 11:3, 11:6, 19:14, 25:8
**Jennie** [20] - 9:15, 9:19, 9:23, 10:1, 10:7, 10:13, 10:17, 10:19, 11:2, 12:5, 12:11, 15:3, 15:13, 18:6, 19:13, 20:6, 20:8, 24:14, 25:15, 27:2
**Jennie's** [1] - 12:23
**Johnson** [1] - 18:1
**judge** [6] - 6:17, 7:1, 7:9, 7:15, 29:2, 29:24
**Judge** [6] - 13:22, 29:3, 29:6, 37:24, 38:6, 38:14
**judge's** [1] - 7:8
**judgment** [2] - 11:16, 11:25
**jurisdiction** [2] - 28:18, 30:25
**jurisdictional** [2] - 31:20, 40:21
**jury** [3] - 4:13, 24:2, 27:22
**justification** [1] - 25:2
**justified** [1] - 25:6

## K

**keep** [1] - 5:4
**key** [1] - 34:11
**kind** [1] - 9:9
**knowingly** [1] - 32:10

## L

**lack** [2] - 17:19, 28:20
**Lake** [7] - 8:2, 8:6, 20:21, 21:1, 21:7, 21:16, 35:19
**large** [1] - 15:22
**largely** [1] - 28:9
**last** [2] - 9:16, 34:18
**late** [2] - 10:20, 16:17
**law** [4] - 14:4, 31:7, 36:17, 38:9, 38:10
**laws** [2] - 9:17, 14:24

**lawyers** [2] - 17:5, 25:18
**lead** [1] - 34:12
**least** [4] - 8:21, 19:22, 23:7, 37:10
**led** [1] - 18:5
**legal** [1] - 20:12
**legality** [1] - 7:18
**legislation** [2] - 18:4, 18:7
**legislature** [4] - 17:2, 17:22, 17:23, 18:12
**liability** [2] - 32:8, 32:9
**licensed** [8] - 20:14, 20:15, 21:15, 21:21, 22:16, 36:11, 36:24
**life** [1] - 36:15
**likelihood** [7] - 26:10, 27:8, 28:17, 37:9, 37:12, 38:25, 39:3
**likelihood-of-success** [2] - 28:17, 37:12
**likely** [2] - 17:7, 25:15
**limitations** [1] - 26:19
**line** [2] - 23:12, 23:15
**literature** [1] - 14:7
**local** [2] - 19:10, 21:3
**locally** [2] - 8:1, 21:8
**located** [4] - 9:23, 21:17, 23:5, 24:16
**logically** [1] - 35:23
**look** [1] - 32:11
**looking** [3] - 33:8, 33:9, 35:11
**loosely** [1] - 32:1
**Lord** [2] - 8:12

## M

**magistrate** [5] - 13:10, 13:15, 13:16, 13:20, 29:4
**magistrate's** [1] - 13:24
**maintains** [1] - 14:16
**majority** [2] - 17:13, 17:19
**mandatory** [1] - 31:2
**manner** [1] - 23:19
**materia** [1] - 25:21
**matter** [2] - 4:16, 26:17
**Mazurek** [3] - 17:11, 17:18, 36:9
**Mccormack** [18] - 4:4, 9:15, 12:8, 13:10, 15:4, 15:13, 15:19, 18:6, 18:16, 20:7,

20:8, 24:15, 25:20, 25:21, 26:3, 26:6, 26:11, 26:15
**Mccormack's** [1] - 14:3
**means** [3] - 6:18, 9:20, 34:25
**meantime** [1] - 30:18
**measure** [1] - 35:7
**medical** [4] - 9:24, 9:25, 36:10, 36:12
**medication** [2] - 5:15, 11:5, 21:11
**medicine** [4] - 23:9, 24:25, 25:8, 36:24
**Medicine** [1] - 24:22
**meet** [1] - 24:10
**meets** [2] - 12:8, 24:17
**memorandum** [2] - 28:10, 37:8
**men** [1] - 22:11
**Menillo** [1] - 36:8
**mens** [1] - 32:9
**mention** [1] - 16:24
**mentioned** [1] - 16:15
**merits** [5] - 25:16, 25:17, 27:5, 36:25, 37:3
**met** [3] - 12:15, 25:22, 37:12
**might** [6] - 23:8, 32:1, 32:4, 32:16, 32:18, 36:13
**Miller** [1] - 18:1
**minimal** [1] - 39:3
**minute** [1] - 6:24
**minutes** [2] - 4:14, 24:5
**misassumption** [1] - 22:19
**misread** [1] - 21:6
**missed** [1] - 19:15
**moot** [1] - 34:7
**mootness** [2] - 25:11, 34:10
**Moreover** [1] - 7:4
**morning** [3] - 4:6, 9:16, 19:1
**Most** [1] - 25:25
**mother** [1] - 9:19
**motion** [10] - 4:4, 13:21, 13:25, 16:16, 16:22, 27:14, 28:8, 38:3, 40:13, 40:16
**motions** [1] - 16:20
**move** [1] - 27:4
**MR** [52] - 5:6, 9:14, 15:8, 15:10, 15:12, 15:18, 16:13, 19:12, 19:19, 20:6, 21:5,

22:5, 22:8, 22:10, 23:3, 23:23, 24:1, 24:7, 26:23, 27:17, 27:20, 27:23, 28:3, 29:4, 29:5, 29:10, 29:19, 30:1, 30:5, 30:14, 30:20, 30:23, 31:11, 31:14, 31:16, 31:19, 33:11, 33:22, 33:25, 34:2, 34:5, 37:20, 38:2, 38:7, 38:18, 38:22, 39:11, 39:16, 39:21, 40:1, 40:7, 40:20
**must** [4] - 16:3, 25:20, 26:6, 35:7

## N

**nature** [1] - 4:18
**near** [1] - 4:21
**nearest** [1] - 9:21
**necessary** [1] - 36:15
**need** [4] - 4:24, 9:7, 16:23, 24:3
**Needless** [1] - 35:18
**needs** [2] - 7:5, 7:11
**never** [1] - 35:14
**new** [1] - 37:23
**New** [1] - 21:16
**Ninth** [4] - 11:10, 15:1, 16:9, 29:21
**noncompliance** [1] - 33:14
**nothing** [1] - 29:7
**notice** [1] - 4:17
**number** [1] - 18:8
**Nye** [1] - 29:3

## O

**observations** [1] - 4:23
**obstacle** [4] - 15:24, 17:9, 17:16, 18:22
**obviously** [1] - 30:16
**occur** [2] - 21:13, 23:6
**occurs** [2] - 14:12, 21:13
**oddity** [1] - 7:12
**offered** [2] - 18:24, 33:1
**Office** [1] - 17:6
**office** [1] - 37:22
**Olson** [1] - 28:4
**Once** [1] - 34:25
**once** [3] - 7:9, 31:1, 37:3

**One** [2] - 5:10, 8:25
**one** [7] - 5:17, 8:21, 9:16, 10:4, 14:16, 20:1, 33:16
**ongoing** [2] - 13:3, 13:4
**operate** [1] - 15:24
**operating** [1] - 22:18
**opinion** [3] - 13:19, 17:5, 17:22
**opportunity** [2] - 16:18, 39:8
**opposed** [1] - 38:2
**option** [1] - 37:19
**oral** [2] - 6:22
**orally** [5] - 6:15, 7:10, 9:5, 29:7, 29:17
**order** [7] - 7:9, 13:20, 13:21, 13:22, 13:24, 37:11, 37:14
**outcome** [1] - 4:19

## P

**page** [1] - 16:10
**pain** [1] - 16:19
**Pain** [3] - 17:3, 34:17, 35:3
**Pain-Capable** [3] - 17:3, 34:17, 35:3
**paperwork** [3] - 7:5, 7:11, 9:6
**paragraph** [1] - 37:20
**paramount** [1] - 27:9
**Parenthood** [5] - 11:9, 14:22, 15:19, 16:6, 16:8
**pari** [1] - 25:21
**part** [3] - 32:2, 33:2, 35:4
**particular** [1] - 28:8
**particularized'** [1] - 11:13
**particularly** [1] - 5:20
**parties** [1] - 14:19
**parting** [1] - 40:24
**party** [7] - 14:12, 14:15, 14:16, 14:17, 14:22, 15:14, 15:15
**passed** [1] - 17:3
**past** [1] - 12:1
**patent** [1] - 28:20
**path** [3] - 17:10, 17:17, 18:22
**patients** [6] - 8:2, 15:2, 24:23, 25:1, 25:4
**pay** [1] - 8:5
**pending** [5] - 6:14,

6:19, 30:8, 30:9,
40:4
**people** [2] - 24:24,
25:1
**people's** [1] - 5:4
**per** [1] - 36:9
**perform** [1] - 8:18
**performed** [5] - 5:11,
6:3, 8:7, 36:11,
36:23
**performing** [2] -
18:20, 32:20
**perhaps** [3] - 8:15,
35:5, 38:16
**period** [1] - 30:16
**person** [1] - 15:4
**perspective** [1] -
31:24
**physically** [3] - 23:5,
24:16, 26:12
**physician** [18] - 5:12,
6:2, 8:10, 19:7, 22:2,
22:15, 23:18, 32:6,
32:14, 32:20, 32:24,
33:4, 33:7, 36:1,
36:11, 36:23, 37:5
**physician-only** [1] -
36:1
**physicians** [3] - 19:9,
21:4, 36:6
**pick** [1] - 24:1
**picking** [1] - 4:13
**pills** [2] - 21:14, 21:17
**place** [3] - 8:3, 17:9,
17:16
**places** [1] - 6:4
**placing** [1] - 18:21
**plainly** [1] - 36:20
**plaintiff** [17] - 7:7,
7:21, 9:7, 11:8,
28:12, 30:3, 32:14,
32:17, 32:22, 33:13,
34:12, 34:14, 34:22,
37:11, 38:15, 39:10,
40:14
**plaintiff's** [5] - 7:22,
19:20, 26:2, 28:19,
36:19
**plaintiffs** [2] - 5:7,
29:7
**Planned** [5] - 11:9,
14:22, 15:19, 16:6,
16:8
**planning** [1] - 8:1
**plus** [1] - 4:11
**point** [11] - 4:21,
14:20, 20:8, 24:7,
25:25, 30:6, 30:7,
34:9, 34:21, 36:18,
39:1

**police** [2] - 32:2, 35:13
**poor** [1] - 12:20
**pose** [1] - 16:4
**position** [3] - 19:6,
21:18, 36:25
**possibilities** [1] - 14:1
**possibility** [2] - 32:4,
39:1
**possible** [4] - 4:10,
14:2, 27:5, 37:15
**potential** [3] - 22:2,
22:22, 38:20
**practical** [1] - 28:25
**practice** [2] - 23:9,
25:7, 36:24
**Practice** [1] - 24:21
**practicing** [1] - 24:25
**practitioners** [1] -
24:24
**precedent** [3] - 29:22,
29:23
**preclass** [1] - 28:12
**preclude** [1] - 21:3
**prefers** [1] - 29:20
**pregnancies** [2] -
33:16, 33:17
**pregnancy** [7] - 23:18,
27:11, 33:19, 34:19,
34:25, 35:9, 36:19
**pregnant** [6] - 9:18,
10:25, 23:17, 25:3,
27:10, 33:21
**prejudice** [1] - 10:10
**preliminary** [2] -
10:10, 26:17
**prescribed** [1] - 23:19
**presence** [1] - 13:11
**present** [2] - 21:9,
28:16
**preserve** [1] - 36:15
**presumably** [3] - 7:13,
8:6, 38:15
**pretty** [1] - 8:14
**previability** [2] -
12:21, 17:7
**primary** [1] - 15:21
**principles** [2] - 29:16,
40:13
**privacy** [1] - 22:12
**problem** [6] - 8:7, 9:8,
24:2, 28:1, 39:21,
40:19
**problems** [1] - 4:23
**proceed** [1] - 7:16
**proceeding** [8] - 6:14,
30:9, 35:4, 38:23,
39:18, 39:23, 39:25,
40:10
**proceedings** [4] -
4:18, 13:3, 13:4,

14:2, 20:11, 38:13
**process** [2] - 5:22,
18:5
**prong** [2] - 28:17,
35:12
**pronged** [1] - 9:9
**pronounce** [1] - 29:17
**pronounces** [1] - 7:10
**properly** [1] - 35:4
**prosecute** [5] - 24:9,
24:19, 24:23, 26:15,
26:20
**prosecuted** [5] - 5:13,
19:5, 21:19, 27:13,
32:5
**prosecuting** [2] -
27:2, 38:8
**prosecution** [7] -
10:23, 22:3, 22:22,
26:7, 37:16, 39:6
**prosecutor** [2] -
11:19, 13:12
**prospectively** [1] -
33:9
**Protection** [3] - 17:4,
34:17, 35:3
**provide** [6] - 7:25,
18:9, 19:10, 19:25,
20:24, 21:11
**provided** [2] - 20:13,
23:1
**provider** [14] - 9:21,
11:1, 18:18, 19:10,
19:15, 20:13, 20:15,
21:8, 21:10, 21:11,
21:15, 21:16, 22:13,
22:14
**providers** [13] - 5:21,
7:24, 9:22, 9:24,
10:5, 10:24, 18:8,
20:24, 24:9, 24:20,
26:4, 26:12, 26:24
**providing** [1] - 21:4
**provision** [1] - 5:25
**provisions** [3] - 34:16,
35:19, 36:3
**public** [1] - 27:17
**purpose** [6] - 17:1,
17:8, 17:15, 18:3,
18:12, 18:21
**purposes** [4] - 13:5,
15:9, 28:16, 37:10
**pursue** [3] - 8:20,
16:23, 26:4
**pursuing** [1] - 38:5
**put** [5] - 4:17, 19:6,
24:13, 24:14, 25:8

## Q

**questions** [3] - 25:16,
25:18, 25:23
**quote** [5] - 13:6,
13:17, 13:20, 14:11,
17:9
**quoted** [1] - 13:19

## R

**raise** [6] - 23:8, 28:21,
30:24, 33:13, 39:22,
40:20
**raised** [4] - 25:18,
28:22, 31:21, 31:25
**Rather** [1] - 16:3
**rather** [1] - 39:9
**rattled** [1] - 8:24
**rea** [1] - 32:9
**read** [3] - 19:23,
23:13, 25:21
**readily** [1] - 5:16
**real** [1] - 10:3
**really** [12] - 5:8, 16:18,
26:25, 28:16, 29:19,
29:21, 31:20, 33:6,
35:4, 35:24, 37:1,
37:4
**reason** [1] - 34:5
**reasons** [2] - 29:10,
37:7
**receiving** [1] - 17:5
**recharge** [1] - 26:3
**recharged** [2] - 10:12,
11:21
**recharging** [2] -
10:14, 10:17
**recognize** [2] - 14:5,
28:5
**recognized** [1] - 34:25
**reconsideration** [1] -
29:13
**redressed** [2] - 11:16,
11:25
**refer** [1] - 8:2
**reference** [1] - 32:7
**referred** [1] - 19:25
**refile** [5] - 7:14, 13:15,
29:16, 30:19, 40:15
**refuse** [2] - 12:18,
12:23
**regard** [1] - 6:11
**regardless** [1] - 33:10
**rehearing** [1] - 29:13
**reinitiated** [1] - 37:17
**reinitiates** [1] - 39:5
**reinstituted** [1] -

39:14
**relevant** [2] - 15:23,
16:5
**relief** [4] - 6:10, 9:10,
13:2, 28:11
**remain** [1] - 36:6
**remedy** [1] - 13:14
**remote** [1] - 37:10
**remove** [1] - 27:2
**represent** [3] - 14:25,
15:1, 15:14
**represented** [1] -
15:17
**reprosecuted** [2] -
38:25, 39:3
**request** [1] - 29:13
**requesting** [1] - 23:20
**require** [2] - 12:25,
36:10
**requirement** [10] -
5:10, 8:10, 8:16,
32:24, 35:25, 36:1,
36:5, 36:21, 36:22
**requirements** [7] -
12:9, 18:19, 20:18,
24:10, 24:18, 25:12,
35:22
**requires** [1] - 6:1
**requiring** [1] - 29:1
**resident** [1] - 22:16
**resolving** [1] - 28:7
**resources** [1] - 24:19
**respect** [10] - 21:5,
28:24, 31:4, 31:25,
32:15, 33:15, 35:6,
35:8, 35:21, 37:13
**respond** [2] - 16:18,
24:4
**responsibility** [1] - 6:5
**restrained** [1] - 18:9
**restraining** [2] -
37:11, 37:14
**result** [1] - 26:13
**review** [2] - 13:6,
13:25
**reviewed** [1] - 4:15
**revisiting** [2] - 4:19,
4:20
**Richard** [1] - 14:9
**rights** [2] - 5:23, 14:18
**risking** [2] - 26:7,
27:13
**Roe** [4] - 14:21, 34:3,
34:5, 36:8
**Roe's** [1] - 34:6
**Ruiz** [1] - 13:14
**rules** [1] - 13:19

## S

**Salt** [7] - 8:2, 8:6, 20:21, 21:1, 21:7, 21:16, 35:19
**satisfied** [2] - 16:3, 31:2
**save** [2] - 16:2, 34:9
**schedule** [1] - 4:11
**scheduled** [1] - 4:8
**seated** [1] - 28:4
**second** [1] - 5:25
**seconds** [1] - 29:16
**section** [1] - 32:7
**secure** [1] - 37:5
**see** [2] - 4:12, 4:23
**seek** [3] - 10:4, 10:25, 19:21
**seeking** [9] - 5:8, 9:10, 12:14, 12:20, 14:24, 15:6, 17:10, 17:17, 18:22
**seeks** [1] - 25:20
**seeming** [1] - 28:25
**selection** [1] - 24:3
**self** [1] - 32:13
**self-induced** [1] - 32:13
**sense** [4] - 5:7, 22:6, 22:24, 35:24
**sent** [3] - 11:3, 11:6, 17:22
**September** [1] - 4:2
**serious** [3] - 25:16, 25:18, 25:22
**services** [2] - 9:21, 10:1
**set** [1] - 37:7
**setting** [1] - 6:4
**sever** [1] - 35:25
**severability** [1] - 35:24
**severed** [1] - 36:4
**sharply** [1] - 26:1
**short** [2] - 4:17, 39:2
**Shortly** [1] - 10:6
**shots** [1] - 40:24
**show** [2] - 9:3, 25:22
**sides'** [1] - 4:24
**signed** [1] - 17:3
**significantly** [1] - 26:13
**similarly** [1] - 15:14
**simply** [3] - 7:13, 32:23, 35:15
**simultaneously** [1] - 14:17
**single** [1] - 9:19
**situated** [1] - 15:15

**situation** [4] - 29:24, 32:18, 32:21, 39:9
**sketchy** [1] - 32:23
**skip** [1] - 25:10
**slicing** [1] - 21:24
**small** [1] - 16:4
**SMITH** [29] - 28:3, 29:4, 29:10, 29:19, 30:1, 30:5, 30:14, 30:20, 30:23, 31:11, 31:14, 31:16, 31:19, 33:11, 33:22, 33:25, 34:2, 34:5, 37:20, 38:2, 38:7, 38:18, 38:22, 39:11, 39:16, 39:21, 40:1, 40:7, 40:20
**Smith** [2] - 24:4, 28:2
**so-called** [2] - 34:16, 35:13
**solely** [2] - 18:18, 34:23
**Sometimes** [2] - 6:24, 6:25
**sought** [1] - 6:10
**southeast** [6] - 9:23, 10:25, 12:21, 23:4, 24:17, 27:13
**speaking** [1] - 40:12
**specifically** [1] - 14:18
**speculative** [1] - 11:23
**speculative[ly** [1] - 11:15
**standard** [2] - 14:21, 25:14
**standards** [1] - 25:13
**standing** [32] - 7:22, 8:8, 8:15, 8:20, 8:23, 9:8, 11:9, 11:11, 12:9, 14:15, 14:22, 14:24, 14:25, 15:14, 15:15, 16:16, 16:23, 16:24, 19:18, 20:2, 21:2, 28:21, 31:22, 32:11, 33:12, 33:13, 33:21, 34:12, 34:15, 34:22, 35:8, 37:4
**Standing** [1] - 11:8
**starting** [1] - 24:3
**state** [38] - 5:9, 6:12, 6:17, 7:8, 7:15, 9:3, 9:5, 13:2, 13:5, 13:9, 13:13, 13:23, 16:17, 17:12, 20:11, 21:12, 22:11, 23:10, 24:8, 24:18, 24:22, 25:2, 25:5, 25:6, 26:25, 27:15, 27:24, 29:24, 30:12, 30:18, 31:9, 36:12, 36:24, 37:6,

38:2, 38:4, 38:7, 40:4
**State** [3] - 11:18, 13:4, 13:17
**state's** [5] - 7:8, 13:14, 21:18, 23:7, 38:1
**statements** [1] - 10:22
**states** [3] - 14:11, 36:10, 37:21
**stating** [1] - 10:24
**status** [1] - 36:17
**statute** [41] - 5:9, 5:13, 6:1, 6:6, 8:4, 8:16, 8:19, 9:11, 12:4, 12:11, 12:12, 14:13, 15:21, 15:23, 16:1, 17:1, 17:6, 17:16, 17:17, 17:23, 18:13, 19:8, 20:22, 21:3, 22:1, 22:4, 23:1, 23:19, 23:21, 26:18, 26:19, 27:7, 33:15, 33:23, 35:15, 35:20, 36:5, 38:14
**statutes** [2] - 25:20, 25:24
**Steven** [1] - 28:4
**still** [12] - 6:19, 7:11, 9:6, 9:22, 21:23, 26:15, 30:12, 31:12, 36:2, 37:19, 38:16, 40:18
**stop** [1] - 39:8
**straight** [1] - 5:4
**strikes** [1] - 21:24
**structure** [1] - 18:4
**submit** [1] - 27:11
**submitted** [2] - 18:11, 40:18
**submitting** [3] - 18:17, 21:19, 26:8
**subsequently** [2] - 40:5, 40:16
**substance** [2] - 6:21, 7:6
**substantial** [4] - 15:24, 17:9, 17:16, 18:21
**substantive** [2] - 35:21, 37:2
**succeed** [2] - 15:22, 25:15
**success** [3] - 28:17, 37:9, 37:12
**sue** [1] - 25:1
**suggest** [2] - 7:6, 36:8
**suggested** [2] - 6:12, 12:3
**suggesting** [2] - 30:2, 33:20

**suit** [1] - 10:13
**suppose** [2] - 23:8, 37:15
**supposed** [1] - 32:6
**Supreme** [6] - 13:13, 13:18, 17:14, 18:1, 24:11, 29:22
**surgical** [1] - 9:25
**susceptible** [1] - 16:1
**System** [1] - 14:11

## T

**table** [1] - 28:4
**technical** [1] - 7:5
**temporary** [2] - 37:11, 37:14
**ten** [1] - 15:18
**term** [1] - 36:12
**terminated** [2] - 31:9, 34:20
**termination** [3] - 34:7, 35:10, 36:19
**terms** [2] - 5:12, 38:19
**test** [1] - 14:13
**theoretically** [1] - 37:15
**therapeutic** [1] - 36:14
**therapeutical** [1] - 5:24
**Therefore** [1] - 13:24
**therefore** [3] - 20:25, 23:20, 38:24
**thin** [1] - 21:24
**thinks** [1] - 24:19
**third** [5] - 14:15, 14:19, 14:22, 15:14, 15:15
**third-party** [4] - 14:15, 14:22, 15:14, 15:15
**threat** [2] - 11:20, 27:2
**three** [2] - 8:25, 9:19
**tied** [1] - 7:7
**tips** [1] - 26:1
**titles** [1] - 5:4
**today** [5] - 7:14, 15:21, 34:14, 35:4
**together** [1] - 4:17
**tracks** [1] - 28:9
**transaction** [1] - 33:5
**travel** [1] - 9:20
**treat** [1] - 25:2
**treats** [1] - 25:3
**trial** [6] - 6:17, 7:15, 17:15, 29:2, 29:24, 38:17
**tried** [1] - 11:21
**TRO** [10] - 12:10, 15:9, 16:16, 25:12, 26:2,

26:6, 26:10, 26:14, 39:2, 40:16
**True** [1] - 38:11
**try** [1] - 4:9
**trying** [2] - 25:8, 32:19
**turn** [2] - 7:13, 12:17
**Turning** [1] - 31:19
**two** [8] - 5:9, 6:10, 8:8, 9:9, 9:10, 31:24, 33:17, 35:6
**two-pronged** [1] - 9:9
**type** [1] - 7:17
**types** [1] - 6:10

## U

**U.S** [4] - 17:14, 18:1, 24:11, 29:22
**unauthorized** [1] - 23:9
**Unborn** [3] - 17:4, 34:17, 35:3
**unclear** [1] - 33:3
**unconstitutional** [4] - 12:11, 17:7, 17:18, 17:24
**unconstitutionality** [1] - 33:15, 36:3
**under** [21] - 5:14, 5:23, 6:2, 9:1, 9:10, 13:14, 14:2, 15:7, 18:16, 20:16, 21:21, 22:19, 23:21, 28:17, 29:18, 32:4, 36:8, 38:13, 40:13
**Under** [1] - 24:21
**undergo** [1] - 15:25
**undergoing** [1] - 32:3
**underlie** [1] - 32:12
**understandable** [1] - 26:25
**undue** [1] - 16:4
**unemployed** [1] - 9:19
**Unfortunately** [1] - 40:25
**unique** [3] - 9:2, 36:18, 38:12
**unlawful** [4] - 10:8, 10:15, 18:18, 26:8
**unless** [3] - 21:2, 33:21
**Unlicensed** [1] - 24:21
**unlicensed** [3] - 24:23, 24:24, 25:7
**untenable** [1] - 36:25
**up** [6] - 4:19, 6:25, 9:15, 9:18, 24:1, 24:6
**upheld** [1] - 27:7

Utah [1] - 20:1
utilize [2] - 5:22, 23:18

## V

various [2] - 31:1,
  35:22
versus [10] - 4:5,
  11:10, 13:8, 13:17,
  15:20, 16:6, 16:8,
  17:11, 17:19, 18:1
Viagra [1] - 22:12
victim [1] - 25:7
view [1] - 40:21
violated [1] - 38:10
violates [1] - 14:18
violating [1] - 26:5
vote [1] - 17:23

## W

Wade [1] - 14:21
wait [1] - 26:16
waiting [1] - 27:22
waive [1] - 39:12
wake [1] - 9:15
Wasden [3] - 11:10,
  16:6, 16:9
Wechsler's [1] - 14:10
weeks [3] - 17:4,
  17:22, 26:12
well-being [1] - 36:16
Weyhrich [2] - 14:23,
  15:17
willing [3] - 19:10,
  19:25, 40:15
willingness [1] - 4:7
woke [1] - 9:18
woman [12] - 5:12,
  5:21, 6:5, 8:17,
  17:10, 17:17, 19:4,
  32:2, 32:4, 32:18,
  33:20, 36:16
woman's [1] - 15:24
women [8] - 12:5,
  12:13, 12:14, 15:15,
  15:17, 19:13, 22:1,
  25:3
words [1] - 40:1
worry [1] - 23:11
wrap [1] - 24:5
written [2] - 7:1, 7:16

## Y

year [2] - 9:16, 34:18
years [4] - 15:18,
  19:15, 26:19, 26:20

York [1] - 21:16
Younger [22] - 6:12,
  7:18, 9:1, 9:4, 12:24,
  13:5, 28:19, 28:24,
  29:15, 29:18, 31:1,
  31:5, 39:7, 39:12,
  39:17, 39:21, 40:6,
  40:7, 40:13, 40:18,
  40:21

## Z

Zepeda [1] - 28:14

**United States Courts, District of Idaho**