UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JENNIE LINN MCCORMACK, on behalf of herself and all others similarly situated, and in the interests of the general public,<br><br>Plaintiff,<br><br>v.<br><br>MARK L. HIEDEMAN, Bannock County Prosecuting Attorney,<br><br>Defendant. | Case No. 4:11-cr-00433-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Plaintiff Jennie Linn McCormack seeks certification under Federal Rule of Civil Procedure 23(b) (2). McCormack filed this class action seeking a determination that Title 18, Chapters 5 and 6, Idaho Code violate various provisions of the United States Constitution. Those chapters regulate the performance of abortion in Idaho.

The Court has determined that oral argument will not significantly assist the decisional process. For the reasons expressed below, the Court will deny the motion to certify.

## BACKGROUND

Plaintiff Jennie Linn McCormack, a resident of Bannock County, is unmarried, has three children, and is unemployed. *McCormack Aff.* ¶¶ 1-2, Dkt. 4. In 2010, she had no income other than child support payments of between $200 and $250 per month. *Id.* ¶ 3. She testifies in her affidavit that she became pregnant during the fall of 2010 and wanted to obtain an abortion, but she knew that no physicians provided abortions in southeast Idaho. *Id.* ¶¶ 4-5. McCormack had previously obtained an abortion in Salt Lake City, Utah, but she did not have the money necessary to obtain another abortion there. *Id.* ¶ 6.

According to a Pocatello Police Department's detail incident report, a police officer, on January 9, 2011, responded to a report from a third party that McCormack "had taken drugs to abort a pregnancy and now had the fetus in a box on her back porch." *Incident Report* at 5, Ex. A to Hearn Aff., Dkt. 21-1.

After receiving the call, the police questioned McCormack at her home. In response to questioning, McCormack initially stated that she had miscarried two weeks earlier, on December 24, 2010, and she had been approximately four weeks into her pregnancy when she miscarried. *Id.* at 6. When asked whether the fetus was outside as had been reported, McCormack denied it. But when questioned further, McCormack dropped her head and pointed toward the back door and said, "It is out there." *Id.* at 6. The officers found the fetus "wrapped in multiple bags and contained in multiple boxes on the exterior back porch area." *Id.* at 4.

MEMORANDUM DECISION AND ORDER - 2

After the police discovered the fetus, McCormack agreed to accompany the officers to the station to answer further questions. *Id.* at 7. While being questioned at the station, McCormack admitted that she had ingested pills to abort the fetus because McCormack did not have enough money to travel to Salt Lake City to get an abortion. *Id.* She stated that her sister who lived in Mississippi had ordered them from an internet provider for $200. *Id.* at 7, 8. McCormack did not know what the pills were. *Id.* at 7. According to McCormack's statement in the police report, the pills arrived in a white envelope with no return address. *Id.* at 8. McCormack took one pink pill, waited 48 hours, and took four white pills. *Id.* at 7. A few hours after taking the pills, the fetus was expelled in the bathroom of McCormack's residence. *Id*. at 5, 7, 8.

McCormack placed the fetus, which was already in a plastic garbage bag, into a box. *Id.* McCormack stated in the report that she kept the box in her room for a week because "she couldn't believe it and didn't want to let it go." *Id.* at 7. She then moved the box outside but had no plan on what to do with the fetus. *Id.* McCormack had not sought medical care during or after the pregnancy. *Id.* at 6, 7.

An autopsy was performed on the fetus, which appeared to be female, two days after discovery by the police. The fetus's length measured between 12.25 and 12.5 inches; the head measured 8.25 inches; the feet measured 1.25 inches in length; and the weight was 453 grams. *Id.* at 18. An attending physician estimated gestational age at 19 to 23 weeks "but with difficult certainty." *Id.* at 19. McCormack stated that she did not know when she conceived as her periods were irregular, but she placed the gestational

MEMORANDUM DECISION AND ORDER - 3

age at various points, including four weeks, 12 weeks, 14 weeks, and 25 weeks. *Id.* at 16, 19, 5 and 8.

For fear of incriminating herself, McCormack has avoided admitting in these proceedings that she induced an abortion with medication purchased over the internet. But it is undisputed that she was charged by Defendant Hiedeman with the felony offense of having an unlawful abortion in violation of Idaho Code § 18-606. The state court orally granted a motion to dismiss the criminal charges against McCormack on August 24, 2011. The state court entered a written decision confirming its oral ruling on September 7, 2011. Hiedeman has not determined whether his office will re-file the criminal charges against McCormack under Idaho Code §18-606(2). *Hiedeman Decl.* ¶ 3, Dkt. 12-1.

## ANALYSIS

With this motion, McCormack seeks to represent

> All women whose right to choose to terminate their pregnancies prior to viability in Bannock County, Idaho has been violated by Defendant's *threat* to (1) prosecute those women criminally for submitting to an abortion by a licensed provider in violation of Idaho Code Title 18, Chapter 6 and/or (2) prosecute those women's licensed providers (a) criminally for having performed those abortions in violation of Idaho Code Title 18, Chapter 6, or (b) criminally and civilly for having performed any of those abortions after 19 weeks gestational age in violation of Idaho Code Title 18, Chapter 5.

Hiedeman objects to McCormack's motion to certify. He maintains that McCormack has no "standing to maintain any of her challenges except those to § 18-606(2), under which she was charged criminally in state court, § 18-608A, which regulates the sale of abortifacients, and the requirement in § 18-608A, which provides

**MEMORANDUM DECISION AND ORDER - 4**

that "[i]t is unlawful for any person other than a physician to cause or perform an abortion." *Def.'s Opp'n* at 5, Dkt. 25. Thus, Hiedeman argues, the requested class is overbroad. Second, Hiedeman contends that even assuming that McCormack has standing, "the idiosyncratic quality of her alleged self-abortion and the lack of likelihood, much less any probative showing by Plaintiff, that any other woman seeking an abortion in Bannock County would engage in comparable conduct vitiate the very basis for Rule 23(b)(2) certification." *Id.* at 6-7.

1.  **Standing**

Before considering the class certification question, the Court must first determine whether McCormack has standing to challenge the identified provisions. Standing requires that McCormack establish (1) she suffered an injury in fact, (2) the injury is fairly traceable to the defendant, and (3) it is likely that the injury will be redressed by a favorable decision. Or, as the Supreme Court has explained: "[a] plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298 (1979). McCormack bears the burden of establishing these elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

A plaintiff contesting the constitutionality of a criminal statute is not required to "first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459(1974). Rather, if the plaintiff alleges an intention to engage in a

course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, she "should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." *Doe v. Bolton*, 410 U.S. 179, 188 (1973). But "persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs." *Younger v. Harris*, 401 U.S. 37, 42 (1971).

    A.    **Standing for Future Pregnancies**

McCormack is not currently pregnant. But she argues that she has standing to attack the abortion statutes at issue based on *hypothetical* abortions in the *future*. The Court agrees with Hiedeman that McCormack's attempt to establish standing on this basis "is quixotic." *Def.'s Resp.* at 11, Dkt. 25.

It appears the overwhelming majority of courts to consider this issue – and most importantly the Supreme Court – have viewed nonpregnancy as fatal to standing. *See, e.g., Roe v. Wade,* 410 U.S. 113, 128 (1973). *See also McInnes-Misenor v. Maine Medical Center*, 211 F.Supp.2d 256, 260 (D.Me. 2002) (collecting cases). Indeed, in *McInness-Misenor*, the court found that the plaintiffs – a couple actively seeking to become pregnant with their second child – did not have standing to bring a claim seeking to compel a birthing center to render its facilitates wheelchair-accessible in anticipation of the couples' future pregnancy. 211 F.Supp.2d at 260. The court explained: "[e]ven granting that she remains of childbearing age and that the Misenors are actively attempting to achieve pregnancy, it is inherently unknowable when (if ever) McInnis–

Misenor will become pregnant. Far from being "actual or imminent," the harm the Misenors fear is conjectural; if McInnis–Misenor never becomes pregnant, they will never confront [the anticipated harm]." *Id.* at 260.

Likewise, in this case, the projected harm McCormack hypothesizes will occur based on a future prosecution for a future abortion of a fetus not yet conceived is not "certainly impending" to establish "injury-in-fact" for standing purposes. McCormack's prosecution under the statute for a future abortion presupposes that (1) McCormack will get pregnant, (2) the pregnancy will be unwanted, (3) McCormack will seek an abortion in Southeast Idaho; and (4) McCormack will be prosecuted for obtaining that abortion. The alleged injury rests on possible future pregnancy, possible future unpreparedness for parenthood, and possible future prosecution. The possibility of each of these future contingencies occurring is mere conjecture.

While imminence is an "elastic concept," the Supreme Court has warned that "it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Lujan* 504 U.S. at 565 n. 2 (internal quotation marks omitted). Heeding the Supreme Court's warning, the Court concludes that the threat of harm based on future pregnancies remains too remote or speculative to present an actual case or controversy within the meaning of Article III.

B.   **Standing for Past Abortion**

The issue of whether McCormack has standing based on her past abortion and prosecution presents a more difficult question.

Hiedeman concedes that McCormack has standing to attack Section 18-606(2), under which she was charged criminally in state court, Section 18-607, which regulates use of abortifacients, and Section 18-608(A), which prohibits persons other than Idaho-licensed physicians to cause or perform an abortion. But Hiedeman argues that McCormack does not have standing to attack any other abortion-related statute. This leaves McCormack's standing to challenged Sections 16-605 and -608 of Chapter 6, and the entirety of Chapter 5, still in dispute.

Hiedeman contends that a "successful challenge on constitutional grounds to [McCormack's] prosecution" for procuring abortifacients to terminate her pregnancy at home "rises or falls on the validity of Sections 18-607 and -608A." In making this argument, Hiedeman suggests that the facts as described in the police report do not implicate Section 18-606(2), when read alone or in connection with Section 18-608. *Def.'s Opp'n* at 9, Dkt. 25. The Court disagrees.

Section 18-606(2) makes it a crime for any woman to submit to an abortion or purposely terminate her own pregnancy otherwise than by a live birth "[e]xcept as permitted by this act." Abortion "means the use of any means to intentionally terminate the clinically diagnosable pregnancy of a woman with knowledge that the termination by those means will, with reasonable likelihood, cause the death of the unborn child." I.C.

18-604(1). Section 18-608 sets forth the "conditions" and "guidelines" for abortions permitted under the "act." Specifically, Section 18-608 makes lawful only abortions performed in a hospital, or in some situations, in a physician's regular office or a clinic, by an Idaho-licensed physician who has consulted with the patient and determined that such abortion is appropriate.

The Court finds that McCormack's conduct directly implicates Sections18-606(2) and -608. McCormack allegedly terminated her pregnancy, using prescription drugs, outside a hospital or clinic, and without consulting an Idaho-licensed physician. Section 18-606(2), when read in connection with Section 18-608, seemingly embraces McCormack's alleged actions. McCormack therefore faces a real threat of prosecution based on these provisions. Indeed, Hiedeman already filed charges against McCormack under Section 18-606(2) based on the facts set forth in the police report, and only the state court's dismissal of the charges without prejudice thwarted his efforts.

This threat of prosecution is not rendered hypothetical because Hiedeman did not reference Section 18-608 in the original prosecution against McCormack, or because he now claims that McCormack's actions do not fall within Section 18-606(2). An attorney general or county prosecutor's proffered interpretation of a state statute does not obviate the hazard of prosecution. *See, e.g., Richmond Medical Center for Women v. Gilmore*, 11 F.Supp.2d 795, 805 (E.D.Va. 1998). For example, in *Richmond*, the court found that the plaintiff physicians had standing to challenge the abortion statute in spite of the attorney general and prosecutor's opinion that the statute did not apply to the abortion procedure

used by the plaintiffs. *Id.* Likewise, in this case, the Court finds that McCormack has standing to challenge Section 18-606(2), when read in connection with Section 18-608, despite Hiedeman's position that McCormack's conduct does not implicate those sections.

The Court, however, finds that McCormack does not have standing to challenge Section 18-605, which criminalizes certain conduct by abortion providers, or any provision of Title 18, Chapter 5, which was not enacted until April 2011 – months after McCormack had her abortion. Under the facts alleged, McCormack – who is not an abortion provider and who did not obtain an abortion after enactment of Title 18, Chapter 5 – does not face any threat of prosecution under either of these statutes. "When plaintiffs 'do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible,' they do not allege a dispute susceptible to resolution by a federal court." *Babbitt*, 442 U.S. at 298-299. Thus, McCormack only has standing to challenge Sections 18-606(2), -607, -608, and -608A. Any proposed class must therefore be limited to those provisions.

**2.     Class Certification**

In order to maintain a class action, McCormack has the burden of showing that she meets the following prerequisites: (1) numerosity ("a class [so large] that joinder of all members is impracticable"); (2) commonality ("questions of law or fact common to the class"); (3) typicality (named parties' claims or defenses "are typical . . . of the class"); and (4) adequacy of representation (representatives "will fairly and adequately protect the

interests of the class"). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 626 (1997). "These requirements effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (U.S. 1982)(internal quotation marks omitted).

Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b). McCormack relies on Rule 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

Invoking these provisions, McCormack seeks to certify a class of women "who are now seeking or will in the future seek an abortion in the County of Bannock, State of Idaho." *Compl.* ¶ 1, Dkt. 1. This class description, however, does not take into account the limited scope of McCormack's constitutional challenge once viewed through the prism of Article III standing requirements. Women, including McCormack, do not have standing to challenge abortion statutes merely because they may get pregnant in the future and may consider getting an abortion in the future.[1] This judicial determination eliminates any women in Bannock County who "will in the future seek an abortion."

---

[1] Indeed, as a practical matter, the fact that future unidentified women are included in the proposed class raises the question of how these individuals will be identified or given notice.

Also eliminated from the class is any woman who is pregnant and "now seeking" an abortion in Bannock County. McCormack is not currently pregnant, and it is axiomatic that she is not currently considering an abortion. A pregnant woman considering an abortion does suffer an injury based on an unconstitutional statute because enforcement of such a statute places an undue burden on the woman's right to choose. *Roe v. Wade*, 410 U.S. 113, 124 (1973). McCormack, by contrast, already made her choice; the injury she now suffers is the threat of prosecution and incarceration. Compared to a pregnant woman who would have standing to challenge all statutes that may place an undue burden on her right to choose, the nature of McCormack's injury limits which provisions she has standing to challenge. This limitation calls into question her adequacy as a representative of a class of pregnant women.

As the Supreme Court has "repeatedly" stated, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *East Tex. Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 403 (1977) (internal quotation marks omitted). Fair and adequate representation requires more than competent counsel. A class representative who is not a member of the class can be found to be an inadequate representative. *Id.* In this case, McCormack cannot adequately protect the interests of the absent class members because she does not have standing to challenge all of the Idaho statutes that might endanger a pregnant woman's right to choose.

This sifting of McCormack's claims through the Article III standing requirements essentially decimates the class as proposed. Only women in Bannock County who have

MEMORANDUM DECISION AND ORDER - 12

recently had an abortion and who have been threatened with prosecution for violating one of the identified provisions of Title 18, Chapter 6 remain as viable class candidates. But the Court has no way of determining whether any such women even exist – with the obvious exception of McCormack herself. And the Court cannot assume this class of women is so large that joinder of all members is impracticable. *Wal–Mart Stores, Inc. v. Dukes,* ––– U.S. ––––, 131 S.Ct. 2541, 2551 (2011). Indeed, Heideman testified that he has only initiated one criminal proceeding alleging a violation of § 18-606 during his nearly 20-year tenure as Bannock County Prosecuting Attorney – and that was the prosecution of McCormack. Based on the record before the Court, it appears the unique circumstances of McCormack's case make her a class of one.

So either McCormack's motion to certify must be denied because she seeks to represent a class of whom she is not a part, or her motion must be denied because she cannot meet the numerosity requirement based on a class of which she is a part.

But even if the Court were to find that McCormack had met her burden in satisfying the prerequisites to maintain a class action, it would decline to certify the proposed class. When declaratory and injunctive relief is sought on behalf of a class, and when the benefits of the relief sought by a plaintiff on her own behalf will benefit all members of a proposed class, a court may exercise its discretion and decline to certify the class. *See Ihrke v. Northern States Power Co.,* 459 F.2d 566, 572 (8th Cir.1972), *vacated as moot,* 409 U.S. 815 (1972); *David v. Smith,* 607 F.2d 535, 540 (2nd Cir.1978); *Local 1928, American Federation of Government Employees v. Federal Labor Relations*

MEMORANDUM DECISION AND ORDER - 13

*Authority,* 630 F.Supp. 947, 948 n. 2 (D.D.C. 1986). The relief requested by McCormack – if she succeeds on her facial challenge to the identified statutes –will clearly inure to the benefit of all of the members of the proposed class. The Court therefore finds that no useful purpose would be served by permitting the case to proceed as a class action.

## ORDER

**IT IS ORDERED that** McCormack's motion to certify (Dkt. 20) is DENIED.

DATED: January 27, 2012

B. Lynn Winmill
Chief Judge
United States District Court