John B. Ingelstrom (ISB#: 2659)
Richard A. Hearn (ISB#: 5574)
Jonathan M. Volyn (ISB#: 6434)
RACINE, OLSON, NYE,
BUDGE & BAILEY, CHARTERED
P.O. Box 1391
Pocatello, Idaho 83204-1391
Telephone: (208)232-6101
Fax: (208)232-6109
jbi@racinelaw.net
rah@racinelaw.net
jmv@racinelaw.net


## IN  THE  UNITED  STATES  DISTRICT  COURT

## FOR  THE  DISTRICT  OF  IDAHO

| | |
|---|---|
| JENNIE LINN MCCORMACK, on behalf of herself and all others similarly situated, and in the interests of the general public, | Case No.  CV-2011-433-BLW |
| Plaintiff, | **McCORMACK'S RESPONSE TO MOTION FOR PARTIAL SUMMARY JUDGMENT BY DEFENDANT** |
| and | |
| RICHARD HEARN, M.D., on behalf of himself and his patients seeking medical abortions for health reasons prior to fetal viability, | |
| Plaintiff-in-Intervention, | |
| vs. | |
| MARK L. HIEDEMAN, Bannock County Prosecuting Attorney, | |
| Defendant. | |

## INTRODUCTION

The Defendant's motion for partial summary judgment based upon "mootness"must be denied for the following three reasons:

First, Hiedeman's declaration that he has "determined that it is not in the interests of justice or an efficient use of [his] office's limited resources to pursue prosecutorial efforts against McCormack with respect to *the* violation alleged in the criminal complaint" does nothing to remove the threat McCormack faces of another prosecution in Bannock County for violating Idaho Code § 18-606.[1]   In his declaration, Hiedeman makes no claim to have altered his "policy" toward enforcement of Idaho Code § 18-606.  Furthermore, Hiedeman's claim that his "determination [not to further prosecute McCormack] is final and not subject to reconsideration" is an *opinion* not in compliance with the requirements of Federal Rule of Civil Procedure 56(e)(1).[2]   Because McCormack's fear of prosecution under Idaho Code § 18-606 is no more "imaginary or speculative" today than it was when she first filed her Complaint, that claim cannot be judged as moot.[3]  Second, McCormack's claim is not moot because it falls within one or more of three recognized exceptions

---

[1]  *Third Declaration of Mark L. Hiedeman* ("*Third Hiedeman Decl.*") [Dkt. 58-2], ¶ 5 (*italics added*).

[2]   *Federal Rule of Civil Procedure 56(e)(1)* ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.")

[3]  *See Memorandum Decision and Order* [Dkt 18-1], 7 (citing *Younger v. Harris*, 401 U.S. 37, 42 (1971) ("But, 'persons having no fears of state prosecution, except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs.'")

to the mootness doctrine: *(a)* the voluntary cessation exception[4], *(b)* the wrong capable of repetition yet evading review exception[5] and *( c)* the collateral consequences exception[6].

Finally, the issue of mootness relative to McCormack's challenge to Idaho Code § 18-606 was itself made insignificant by the filing of the Complaint-in-Intervention because the identical controversy alleged by Hiedeman to be moot is also alleged in the Complaint-in-Intervention and denied by Hiedeman in the Answer.[7]  As long as the constitutional challenge brought by Dr. Hearn to the future enforcement of Idaho Code § 18-606 remains judicable, that same challenge brought

---

[4]  *Friends of the Earth, Inc. v. Laidlaw Envir. Servs. (TOC), Inc.,* 528 U.S. 167, 189, 120 S. Ct. 693, 145 L. Ed.2d 610 (2000) ("A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. [However,] [t]he heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness")

[5]  *Spencer v. Kemna*, 523 U.S. 1, 17, 118 S. Ct. 978, 140 L. Ed.2d 43 (1998) (The capable of repetition yet evading review exception applies "where the following two circumstances [are] simultaneously present: (1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.") (*quoting Lewis v. Continental Bank Corp.*, 494 U.S. 472, 481, 110 S. Ct. 1249, 108 L. Ed.2d 400 (1990))

[6]  *Super Tire Engineering Co. v. McCorcle*, 416 U.S. 115, 121, 94 S. Ct. 1694, 40 L. Ed.2d 1 (1974) (When declaratory relief is requested, a case is not moot if taking "the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment") (*quoting Maryland Casualty Co. v. Pacific & Oil Co.*, 312 U.S. 270, 273, 85 L. Ed. 826, 61 S. Ct. 510 (1941)).

[7]  *See Amended Complaint-in-Intervention* [Dkt. , 56] ¶¶ 79- 80 ("Plaintiff-in-Intervention brings this claim challenging the constitutionality of [Title] 18, [Chapter] 6 both facially and as applied to his patients including Plaintiff McCormack and the previously identified class. Threatened enforcement of Idaho Code Title 18 violates the rights of Plaintiff in Interventions's patients including Plaintiff McCormack as guaranteed by the Fourteenth Amendment of the United States Constitution by threatening the women considering having an abortion with criminal abortion simply for undergoing an abortion in Bannock County and thereby imposes an undue burden on women desiring to obtain an abortion in Bannock County."); *See Answer to Amended Complaint-in-Intervention* [Dkt. 57], ¶ 29 ("Paragraphs 79 through 84 are denied")

by McCormack cannot be moot.  "As [this Court's] jurisdiction and [this Court's] duty to answer the questions raised here would be unaffected by the resolution of [Hiedeman's] challenge to [McCormack's] standing, [this Court] should decline to decide the issue."[8]

In Hiedeman's Memorandum in Support of Motion for Partial Summary Judgment ("*Hiedman Memorandum*"),[9] Hiedman fails to even address two of the three applicable exceptions to mootness and completely ignores the effect of the filing of the Complaint-in-Intervention on the mootness of McCormack's challenge to Idaho Code § 18-606.  For these reasons alone, his motion for partial summary judgment on mootness should be denied.

## FACTS

**Access to Abortion Providers in Idaho:**  There are no licensed health care providers offering elective abortion services in southeast Idaho which encompasses both Health District 6 and Health District 7.[10]  Although the Southeastern District Health Department ("SEHD") provides reproductive health services to women in Health District 6, it does not provide abortion services. The SEHD refers women seeking abortions in Health District 6 which includes Bannock County to licensed providers in Utah.[11]  As stated on the handout provided women seeking a referral from the

---

[8]  *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 917 (9th Cir. 2004) (declining to decide standing question relative to Planned Parenthood on appeal where there was no dispute that at least one other party had standing); *See also Roe v. Wade*, 410 U.S. 113, 127, 93 S. Ct. 705, 35 L. Ed.2d 147 (1973) (finding the "issue of the Does' standing in [Roe's] case has little significance [because t]he claims they assert are essentially the same as those of Roe, and they attack the same statutes")

[9]  *Memorandum in Support of Motion for Partial Summary Judgment* ("*Hiedman Memorandum*") [Dkt. 58-1]

[10]  *Mann Affidavit* [Dkt. 5], §§ 5 and 7

[11]  *Mann Affidavit*, §§ 3,4 and 8

SEHD for abortion services, medical abortions are only available up through the 9th week of pregnancy and the cost of a surgical abortion performed at the latest point in pregnancy in which such abortions are offered (20 weeks) is $2000.[12]

"In 2009, 1,583 abortions to Idaho residents occurred in Idaho and 765 were performed out of state."[13]  The numbers of abortions reported as being performed in 2009 for women living in Bannock County compared to the number of abortions performed on such women out of state was 24 performed in state compared to 96 performed out of state.[14]  Most abortions performed on women residing in Idaho in 2009 occurred during the first trimester.  Of the 1,650 total abortions reported as having occurred in Idaho in 2009, 556 (33.7%) of those abortions were medical (non-surgical).[15] There were 85 second trimester abortions (13 through 24 weeks) performed in Idaho in 2009.[16]

**McCormack Pregnancy in the Fall of 2010:**  In 2010, Jennie Linn McCormack was unmarried and living in Bannock County Idaho.[17]  At that time, she had three children ages 2, 11 and 18 and was unemployed.[18]  Her only source of income in 2010 was child support payments of between $200 and $250 per month.[19]  In the fall of 2010, McCormack discovered that she was

---

[12]  *Mann Affidavit*, §9 and Exhibit A.

[13]  *Fourth Affidavit of Counsel for McCormack* [Dkt 31], Exhibit A, 115.

[14]  *Fourth Affidavit of Counsel for McCormack*, Exhibit A, 116.

[15]  *Fourth Affidavit of Counsel for McCormack*, Exhibit A, 119

[16]  *Fourth Affidavit of Counsel for McCormack*, Exhibit A, 119

[17]  *Affidavit of Jennie L. McCormack* ("*McCormack Affidavit*") [Dkt. 4], § 1

[18]  *McCormack Affidavit*, § 2

[19]  *McCormack Affidavit*, § 3

pregnant and chose to have an abortion.[20]  She knew that (1) abortions were not available from providers located in southeast Idaho and (2) she did not have the money to travel to Utah to obtain an abortion.[21]  McCormack then discovered that medications approved by the Federal Drug Administration for inducing abortions (medical abortions) could be purchased from providers over the internet.[22]

**Police Investigation of Alleged Abortion:**  On January 9, 2011, Pocatello police officers questioned McCormack about an alleged illegal abortion that had been reported as having occurred in Bannock County.  While being questioned at her apartment, McCormack voluntarily led police officers to the remains of a fetus present on her back porch.[23]  At an autopsy performed on the fetus on January 11, 2011, Dr Murdock estimated the gestational age of the fetus as being "19 to 23 weeks, but with difficult certainty."[24]

According to the police report,

McCormack admitted that she had taken five pills to abort the baby.  McCormack stated that her sister Janelle had ordered the pills and had sent then to her.  McCormack stated that she understood the pills would abort the baby within four hours of finishing the pills.  A short time later the baby was aborted.  McCormack did admit that she believed she was 14 weeks into her pregnancy.[25]

---

[20]  *McCormack Affidavit*, § 4

[21]  *McCormack Affidavit*, §§ 5 and 6

[22]  *McCormack Affidavit*, § 8

[23]  *Third Affidavit of Counsel* [Dkt. 21], Exhibit A ("*Police Report*"), 3 and 10.

[24]  *Police Report*, 19

[25]  *Police Report*, 5

McCormack allegedly then told police that she and her sister decided to obtain the pills from a provider over the internet.

> McCormack further stated that when she discovered that she was pregnant, she had spoken to to her sister Janelle and they had decided to check the internet for pills to abort the baby, as McCormack did not have enough money to go to Salt Lake to get a medical abortion.  McCormack stated that after Janelle had found the pills on the internet, it took five to seven days for the pills to arrive at her residence.  McCormack stated that Janelle paid for the pills and had them sent to McCormack's residence. . . . McCormack clarified that Janelle had paid $200.00 for the pills to abort the baby.[26]

**Prosecution of McCormack:**  In May of 2011, McCormack was charged by the Defendant with having had an unlawful abortion in Bannock County.[27]  The Criminal Complaint charged McCormack "with the public offense of UNLAWFUL ABORTION, Idaho Code § 18-606.[28]  On or about September 7, 2011, the charges against McCormack for having submitted to an unlawful abortion in violation of Idaho Code § 18-606 were dismissed without prejudice.[29]  On the same day, Hiedman filed an affidavit stating that his "office has not determined as of this date whether new or additional evidence is or may become available to warrant re-commencing a prosecution under Idaho Code § 18-606."[30]

If McCormack were to become pregnant again, she has decided that she would attempt to have a medical abortion in Bannock County, Idaho using medications approved by the FDA that she

---

[26]  *Police Report*, 8

[27]  *McCormack Affidavit*, § 9; *Hiedeman Affidavit* [Dkt 18-2], § 2.

[28]  *McCormack Affidavit*, Exhibit A.

[29]  *Hiedeman Affidavit*, Attachment B

[30]  *Hiedeman Affidavit*, § 2.

would attempt to obtain from an abortion provider over the internet.[31]  To avoid the threat of being prosecuted again for terminating a future unwanted pregnancy in Bannock County, McCormack will be required to alter her behavior so as to avoid the possibility of a future unwanted pregnancy by either avoiding sexual relations altogether or by utilizing birth control measures that she has not chosen to use in the past.[32]  As long as the Defendant is enjoined from enforcing Title 18, Chapters 5 and 6, McCormack will not be required to alter her prior behavior because she will be confident that the Defendant would not file charges against her.

**Defendant Hiedeman's Third Declaration:**  Defendant Hiedeman filed his "Third Declaration" as support for his motion for partial summary judgment.[33]  In Paragraphs 4 and 5 of his Third Declaration, Hiedeman testifies as follows:

> 4.      I stated in a Declaration filed in McCormack v. Hiedeman, No. 11-CV-00397-BLW (D. Idaho), on September 7, 2011, that no decision had ben made concerning whether to re-file the criminal complaint.  Dkt 18-1 at p. 20 In view of the magistrate's order, additional evidence of a violation of § 18-606 with respect to the alleged abortion by Ms. McCormack was necessary to warrent such re-filing.  At the time that the declaration was filed, it was uncertain whether the additional evidence could be gathered.

> 5.      My office has not developed additional evidence since the filing of the referenced declaration [Dkt 18-1] and has concluded that no likelihood of doing so exists.  Under these circumstances, I have determined that it is not in the interests of justice or an efficient use of my offices's limited resources to pursue prosecutorial efforts against Ms. McCormack with respect to the violation alleged in the criminal complaint.   My determination in this regard is final and not subject to reconsideration.[34]

---

[31]  *McCormack Affidavit*, §§ 12, 13 and 14

[32]  *McCormack Affidavit II*, § 5

[33]  *Third Hiedeman Decl.* [58-2]

[34]  *Third Hiedeman Decl.*, ¶¶ 4,5.

No where in his Declaration does Hiedeman claim that his understanding regarding the constitutionality of Idaho Code § 18-606 has changed since the filing of this action.

## ARGUMENT

**A.    Standard of Review**

Although a motion for summary judgment may be based upon a jurisdictional fact, the standard remains that articulated by Federal Rule of Civil Procedure 56.

> The standards that must be applied in ruling on a motion to dismiss vary according to the jurisdictional challenge.  In general, a court is free to hear evidence regarding jurisdiction and to rule on the issue prior to trial.  **However, a court may not resolve genuinely disputed facts where the "question of jurisdiction is dependent on the resolution of factual issues going to the merits."**
>     In ruling on a jurisdictional motion involving factual issues which also go to the merits, the court should employ the standard applicable to a motion for summary judgment, as a resolution of the jurisdictional facts is akin to a decision on the merits. *Thornhill Publishing Co. v. General Telephone Corp.*, 594 F.2d 730, 733-35 (9th cir. 1979); *Augustine v. United States*, 704 F.2d 1074 (9th Cir. 1983).[35]

When the moving party shows that there is "no genuine dispute as to any material fact," the moving party will be "entitled to judgment as a matter of law."[36]  "Material facts" are those that are "relevant to an element of a claim or defense and whose existence might effect the outcome of the suit."[37]  There is no "genuine dispute" regarding a material fact unless there is sufficient evidence for the finder of fact to return a verdict for the nonmoving party.[38]  The inferences drawn from the

---

[35]  *Noel v. Dept. of the Navy*, 893 F. Supp. 1410, 1416 (N.D. Cal. 1995) (*emphasis added*) (*citations omitted*)

[36]  *Fed. R. Civ. P. 56( c).*

[37]  *T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)

[38]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986)

underlying facts of the case are "viewed in the light most favorable" to the nonmoving party.[39]  The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact.[40]  When the moving party meets its initial burden of showing that is no "genuine dispute," the nonmoving party must show there is some genuine dispute for trial.[41]  When considering motions for summary judgment, the court may not weigh evidence or make credibility determinations.[42]

**B.**     **Absent the Preliminary Injunction, McCormack's Fear of Prosecution for Submitting to an Abortion Would Be No More Imaginary Than When She Originally Filed This Action.**

There is at least a question of fact as to whether the existing preliminary injunction provides McCormack with broader relief than the relief "promised" by Hiedeman in his third declaration.  If, as McCormack contends, she has already achieved greater relief in this action than promised her in the Third Hiedeman Declaration, there continues to exist a case or controversy between McCormack and Hiedeman as to whether McCormack is entitled to that relief already provided her by the Court.

> "A case is moot if the issues presented are no longer live and there fails to be a 'case or controversy' under Article III of the Constitution." *Pilate v. Burrell (in re Burell)*, 415 F.3d 994, 998 (9th Cir. 2005). "The test for mootness of an appeal is whether the appellate court can give the appellant any effective relief in the event that it decides the matter on the merits in his favor.  If it can grant such relief, the matter is not moot" *Id.* (Internal quotation marks and citations omitted)   In other words, "[t]he

---

[39]  *Matsushita Elec. Indus. Co., Ltd v Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed.2d 538 (1986)

[40]  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986)

[41]  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986)

[42]  *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997)

court must be able to grant effective relief, or it lacks jurisdiction and must dismiss the appeal."[43]

Unless Hiedeman's Third Declaration provides McCormack with at least the same relief already provided her by this Court in the preliminary injunction, this Court can still provide McCormack with "effective relief in the event that it decides the matter on the merits in h[er] favor."[44]  Because this Court could permanently enjoin Hiedeman from enforcing Idaho Code § 18-606 in conjunction with § 18-608(1) "if it decides the matter on its merits in her favor," McCormack's case is not moot.

Hiedeman failed to file a "separate statement of material facts . . . which the moving party contends are not in dispute" with his motion for partial summary judgment.[45]  Because Hiedeman does not set out any standard of review in his Memorandum in Support of Motion for Partial Summary Judgment ("*Hiedeman Memorandum*"), it is unclear what standard he contends should be applied to his motion.  What is clear is that Hiedeman's pending motion is based upon factual allegations contained in his Third Declaration that are not undisputed.

The substance of Hiedeman's argument revolves around two affidavits submitted by Hiedeman himself.[46]  Because Hiedeman contends that McCormack's standing to challenge the constitutionality of Idaho Code § 18-606 rests solely on a statement in his first affidavit,[47] Hiedeman

---

[43] *Equal Employment Opportunity Commission v. Federal Express Corporation*, 558 F.3d 842, 846-847 (9th Cir. 2009) (*quoting Pub. Util. Comm'n v. FERC*,, 100 F.3d 1451, 1458 (9th Cir. 1996))

[44] *Federal Express*, 558 F.3d at 847 (*quoting Pilate v. Burrell (in re Burell)*, 415 F.3d 994, 998 (9th Cir. 2005)

[45] *Local Rule for the U.S. District Court of Idaho 7.1(b)(1).*

[46] *Heideman Affidavit* [Dkt 18-2] and *Third Hiedeman Decl.* [Dkt 58-2]

[47] *Hiedeman Memorandum* [Dkt. 58-1], 4 (*quoting Hiedeman Decl.* [Dkt 18-2 at 2, ¶ 3] ("[m]y office has not determined as of this date whether new or additional evidence is or may

argues that a statement in his third affidavit deprives McCormack of standing making her claim moot. [48]

In his two affidavits, Hiedeman carefully avoids referencing any concerns about the constitutionality of Idaho Code § 18-606 as playing a role in his decision not to re-file charges against McCormack.  Likewise, Hiedeman  avoids any mention in those affidavits of the existing preliminary injunction barring prosecution of women in Bannock County for violating Idaho Code § 18-606.  Instead, Hiedeman claims McCormack's facial challenge to Idaho Code § 18-606 is moot because he "has concluded that the necessary additional evidence cannot be developed."[49]  In other words, Hiedeman's decision not to re-file charges against McCormack does not represent any change of policy, *i.e.*, Hiedeman's policy of only filing charges when supported by sufficient evidence never changed.  More importantly, there is no reason to believe that Hiedeman's policy regarding enforcement of Idaho Code § 18-606 in Bannock County ever changed.  Without any change in policy, the case and controversy between Hiedeman and McCormack in regards to the constitutionality of Idaho Code § 18-606 remains the same today as when this case was filed originally.

There is at least a genuine issue of material fact as to whether McCormack still faces a threat of  prosecution in Bannock County for violating  Idaho Code § 18-606.[50]   The Third Hiedeman

_____

become available to warrant recommencing a prosecution under Idaho Code § 18-606")

[48] *Hiedeman Memorandum*, p 3 (*quoting Third Hiedeman Decl.* [Dkt 58-2] at 2, ¶ 5 ("I have determined that it is not in the interests of justice or an efficient use of my office's limited resources to pursue further prosecutorial efforts against Ms. McCormack with respect to the violation alleged in the criminal complaint")

[49] *Hiedeman Memorandum*, 3.

[50] *See Statement of Material Disputed Facts*

Declaration fails to even address the threat of prosecution for aborting future pregnancies McCormack would face if her case was dismissed and the existing preliminary injunction was lifted.[51]  Hiedeman conveniently ignores the fact that the existing preliminary injunction in this case was not based on McCormack's "as-applied" challenge to Hiedeman's enforcement of Idaho Code § 18-606.

> In sum, the Court finds that Plaintiff is likely to succeed on the merits of her claim that requiring a woman to ensure that her abortion provider complies with the statutory requirements imposed by § 18-608(1), imposes an undue burden on her right to choose.  Because the Court finds that Plaintiff is likely to succeed on the merits of her facial challenge to § 18-606, read in conjunction with § 18-608(1), the Court will not consider Plaintiff's as-applied challenge.[52]

Hiedeman's promise not to "apply" § 18-606, read in conjunction with § 18-608(1), to McCormack's past conduct cannot moot her "facial" challenge to these statutes.  This fact alone should preclude granting Hiedeman's motion for partial summary judgment.

Hiedeman has also failed to show that his promise never to enforce Idaho Code § 18-606 against McCormack for her alleged illegal abortion in 2010, regardless of the strength of any future evidence which may subsequently be discovered, would be consistent with his duties under Idaho Code § 31-2604(2).[53]  Furthermore, Hiedeman did not claim in his Third Declaration that he would object to the Idaho Attorney General's Office prosecuting McCormack for her alleged 2010 abortion in Bannock County even if he himself refused.

---

[51]  *Statement of Material Disputed Facts, 3.*

[52]  *Memorandum Decision on TRO* in McCormack I entered September 23, 2011 incorporated into McCormack II by Order Granting Preliminary Injunction [Dkt 27], 15.

[53]  Idaho Code § 31-2604(2) ("It is the duty of the prosecuting attorney: . . . 2. To prosecute all felony criminal actions . . . ")

> [U]nless the county prosecutor objects, the attorney general may, in his assistance, *do every act* that the county attorney can preform." That is, the attorney general may in effect deputize himself (or be deputized by the governor) to stand in the role of a county prosecutor, and in that role exercise the same power to enforce the statute that the prosecutor would have.  That power demonstrates the requisite causal connection for standing purposes.  An injunction against the attorney general could redress plaintiffs' alleged injuries, just as an injunction against the Ada County prosecutor could. [54]

Although the Attorney General is not a named party, success on the merits of McCormack's facial challenge to Idaho Code § 18-606 would redress any threat she potentially faces from the Attorney General.

Finally, Hiedeman has not shown that his alleged decision not "to pursue further prosecution of Ms McCormack" would be binding upon "his agents and successors in office" in Bannock County.[55]  Hiedeman has failed to meet his burden of showing that McCormack would not still face a threat of future prosecution in Bannock County if her case was dismissed and the preliminary injunction was lifted.  As such, Hiedeman's motion for partial summary judgment on mootness grounds must be denied.  Because this Court can still grant McCormack effective relief in excess of that promised in Hiedemna's Third Declaration, her case is not moot.

**C.   Hiedeman Has Failed to Show the Absence of a Genuine Issue of Material Fact as to Whether One or More Exceptions to Mootness Should Apply.**

A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. [However,]

---

[54]  *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 920 (9th Cir. 2004) (*citations omitted*)

[55]  *Complaint*, ¶ 9 ("Defendant Mark L. Hiedeman ("*Prosecutor*") is the Bannock County Prosecuting Attorney.  He is charged with the enforcement of Idaho Code title 18, Chapters 5 and 6, and is being sued in his official capacity only, as are his agents and successors in office.")

[t]he heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.[56]

As discussed above, Hiedeman's statements set forth in his Third Declaration fail to meet his burden as the moving party of showing that the "challenged conduct cannot be reasonably be expected to start up again." The challenged conduct in this case is the imposing of an undue burden on women such as McCormack who are seeking abortions in Bannock County. The Third Declaration – because it fails to show that the conduct preliminarily enjoined by this Court ever ceased – cannot be read as supporting any claim that this conduct "cannot reasonably be expected to start up again."

In his Memorandum, Hiedeman admits that the mootness doctrine does contain

a "voluntary cessation" exception to mootness. Under this doctrine, the mere cessation of illegal activity in response to pending litigation does not moot the case, unless the party alleging mootness can show that the "allegedly wrongful behavior could not be reasonably expected to recur." . . . Without such an exception, "the courts would be compelled to leave the [d]efendant . . . free to return to his old ways."[57]

But, after citing the correct rule, Hiedeman completely misses the point of that rule by conflating his decision not to further prosecute McCormack based upon a lack of evidence with the "allegedly wrongful behavior". McCormack never claimed that the threat she faces for violating Idaho Code § 18-606 was "wrongful" because there was an absence of necessary evidence. Because Hiedeman's promise not to re-file charges against her addresses a "wrong" that McCormack never claimed had occurred, that promise does nothing to address – much less moot – her claim to have been wronged by the burden imposed on her by the threat of future enforcement of Idaho Code § 18-606.

---

[56] *Friends of the Earth, Inc. v. Laidlaw Envil. Servs. (TOC), Inc.,* 528 U.S. 167, 189, 120 S. Ct. 693, 145 L. Ed.2d 610 (2000)

[57] *Hiedeman Memorandum*, 5 (*quoting Rosemere Neighborhood Ass'n v. USEPA*, 581 F.3d 1169 1173 (9th Cir. 2009) (*citation omitted*))

**McCORMACK'S RESPONSE TO MOTION FOR PARTIAL SUMMARY JUDGMENT BY DEFENDANT - Page 14**

Nor does McCormack dispute Hiedeman's claim that "[t]he government's change of policy presents a special circumstance in the world of mootness."[58]   As the Ninth Circuit recently held, "unlike in the case of a private party, we presume the government is acting in good faith" when it claims to have changed its **policy**.[59]  But, in this case, there has been no change in **policy**.  At most, the Third Declaration shows that Hiedeman has come to a different decision now than he came to originally when he charged McCormack, but, in both instances Hiedeman would come to that decision by applying the same policy -- file charges only when the evidence is sufficient.[60]

There are two other potentially applicable exceptions to the mootness doctrine, but, because Hiedeman as the moving party has not argued against their applicability to his motion, McCormack will only mention them for the purpose of showing that Hiedeman has failed to show that neither of them would be applicable in this case.

The first of these two recognized exceptions to mootness is the "capable of repetition yet evading review" exception.  "The capable of repetition yet evading review exception applies "where the following two circumstances [are] simultaneously present: (1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again."[61]

---

[58]   *Hiedeman Memorandum*, 5 (*quoting American Cargo Transport, Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010))

[59]   *Id.* (*emphasis added*).

[60]   If Hiedeman wanted to change policy regarding enforcement of Idaho Code § 18-606, he could stipulate to allow the existing preliminary injunction to become permanent.

[61]   *Spencer v. Kemna*, 523 U.S. 1, 17, 118 S. Ct. 978, 140 L. Ed.2d 43 (1998) (*quoting Lewis v. Continental Bank Corp.*, 494 U.S. 472, 481, 110 S. Ct. 1249, 108 L. Ed.2d 400 (1990))

Hiedeman's failure to address this exception to the mootness doctrine in a case challenging an abortion statute is especially surprising considering this exception's importance in *Roe v. Wade*.

> But, when, as here, pregnancy is a significant factor in the litigation, the normal 266-day human gestation period is so short that the pregnancy will come to term before the usual appellate process is complete.  If that termination makes the case moot, pregnancy litigation seldom will survive much beyond the trial stage, and appellate review will be denied.  Our law should not be that rigid.  Pregnancy often comes more than once to the same women, and in the general population, if man is to survive, it will always be with us**.  Pregnancy provides a classic justification for a conclusion of nonmootness.**[62]

Hiedeman's failure to present any argument in his opening brief as to why this exception would not apply is fatal to his motion for partial summary judgment on mootness grounds.

The second of these exceptions to mootness potentially applicable to this case is the "collateral consequences exception.  "When declaratory relief is requested, a case is not moot if taking "the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment"[63] Declaratory relief has been requested by McCormack.[64] Therefore, if Hiedeman agreed not to prosecute McCormack again, the only remaining question would be whether "there is a substantial controversy, between the parties having adverse legal

---

[62] *Roe v. Wade*, 410 U.S. 113, 125, 93 S. Ct. 705, 35 L. Ed.2d 147 (1973) (*emphasis added*)

[63] *Super Tire Engineering Co. v. McCorcle*, 416 U.S. 115, 121, 94 S. Ct. 1694, 40 L. Ed.2d 1 (1974) (*quoting Maryland Casualty Co. v. Pacific & Oil Co.*, 312 U.S. 270, 273, 85 L. Ed. 826, 61 S. Ct. 510 (1941)).

[64] *Complaint*, Prayer for Relief ("Wherefore Plaintiffs pray for Judgment against Defendant as follows: A. Issue a declaratory judgment that Chapters 5 and 6 Idaho Code Title 18 as pled above violate the rights of Plaintiffs guaranteed by the Fourteenth Amendment to the Unitied States Constitution . . .")

interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment".[65]
Because the answer to this question is yes, McCormack's case is not moot.

*Super Tire* involved a dispute between employers and the State of New Jersey as to the
eligibility of striking workers for public assistance.  The unions were allowed to intervene in the
case.

> The respondent union invites us to conclude that the controversy between the
> petitioners and the State became moot when the particular economic strike
> terminated upon the execution of the new collective-bargaining agreement.  That
> conclusion, however, is appropriate with respect to only one aspect of the lawsuit,
> that is, the request for injunction relief made in the context of official state action
> during the pendency of the strike.[66]

The ending of the strike made the request for injunctive relief moot, but, as the Court explained, not
the request for declaratory relief.

> The New Jersey governmental action [authorizing public assistance for striking
> workers] does not rest on the contingencies of another strike and the discretionary act
> of an official.  **Rather, New Jersey has declared positively that able-bodied
> striking workers who are engaged, individually and collectively, in an economic
> dispute with their employer are eligible for economic benefit.  This policy is
> fixed and definite.  It is not contingent upon executive discretion.**  Employees
> know that if they go on strike, public funds are available.   The petitioners' claim is
> that this eligibility affects the collective-bargaining relationship, both in the context
> of a live labor dispute when a collective bargaining agreement is in process of
> formulation, *and* in the ongoing collective bargaining relationship so that the
> economic balance between labor and management, carefully formulated and
> preserved by Congress in the federal labor statutes, is altered by the State's
> beneficent policy towards strikers.[67]

---

[65] *Super Tire*, 416 U.S. at 121

[66] *Super Tire*, 416 U.S. at 121

[67] *Super Tire*, 416 U.S. at 122 (*emphasis added*)

Likewise, Idaho has declared positively that pregnant women who seek abortions may be criminally prosecuted under Idaho Code § 18-606 by county prosecutors for the statutory violations of their abortion providers.  "This policy is fixed and definite.  It is not contingent upon executive discretion."[68]  McCormack's claim is that threatened enforcement of Idaho Code § 18-606 by the Bannock County prosecutor unduly burdens her, both in the context of an actual pregnancy *and* in her ongoing decision making concerning her reproductive health so that the balance between her right to choose and the State's right to regulate abortions has been altered.  "It is sufficient, therefore, that [McCormack] show the existence of an immediate and definite governmental action or policy that has adversely affected *and continues to affect a present interest.*"[69]  Hiedeman has made no showing that threatened enforcement of Idaho Code § 18-606 against mcCormack if she seeks an abortion in the future will not continue to affect a present interest even when she is not pregnant. Because the threat does continue to affect a present interest, McCormack's claim for declaratory relief is not moot.

**D.      Because Plaintiff-in-Intervention Has *Jus Tertii* Standing to Challenge Enforcement of Idaho Code § 18-606 Against McCormack Arising from Future Pregnancies, McCormack's Facial Challenge to Idaho Code § 18-606 Is Not Moot.**

When one plaintiff has standing to challenge the constitutionality of a statute, it is not necessary for a court to consider whether the other named plaintiffs have standing.[70]  Because it is

---

[68]  *Id.*

[69]  *Super Tire*, 416 U.S. at 125-26 (*emphasis added*)

[70]  *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 917 (9ᵗʰ Cir. 2004) (declining to decide standing question relative to Planned Parenthood on appeal where there was no dispute that at least one other party had standing); *See also Roe v. Wade*, 410 U.S. 113, 127, 93 S. Ct. 705, 35 L. Ed.2d 147 (1973) (finding the "issue of the Does' standing in [Roe's] case has little significance [because t]he claims they assert are essentially the same as those of Roe, and they attack the same statutes")

undisputed that Plaintiff-in-Intervention is a licensed physician capable of legally proscribing medication to women in Bannock County, Idaho,[71] he has *jus terii* standing to assert the rights of those women whose access to abortions in Idaho are restricted.[72]

One such woman whose access to abortions in Bannock County is restricted is Plaintiff Jennie McCormack.  In granting Plaintiff-in-Intervention's motion to intervene, this Court held that, "[a]s a health care provider seeking to provide abortions and medications for that purpose, Hearn [Plaintiff-in-Intervention] has an interest in the ability of women in Bannock County to obtain abortions without fear of prosecution by the state, as well as an interest in his own ability to provide abortions to such women without fear of prosecution."[73]  This Court then explained that Hearn's interest in this case extends to women such as McCormack who are not currently pregnant.

> Despite Hearn's reliance on hypothetical, future abortion patients for the protectability of his interest, the Ninth Circuit has held in similar situations that the doctor's interest in "practicing medicine pursuant to his best medical judgment" is implicated by statutes like those at issue here.  *Planned Parenthood of Idaho,* 376 F.3d at 917.  Thus, Dr. Hearn has a protectable interest sufficiently related to the issues of this case.[74]

---

[71] *Answer to the Amended Complaint-in-Intervention* (Dkt 56), ¶ 5(""Paragraphs 9 through 12 are admitted")

[72] *Aid for Women v. Foulston*, 441 F.3d 1101 (10th Cir. 2006) (*citing Planned Parenthood of N. New Eng. v. Heed*, 390 F.3d 53, 56, n.2 (1st Cir. 2004) ("Because of their close relationship to the abortion decision, and the rights involved, [abortion] providers routinely have *jus terii* standing to assert the rights of women whose access to abortion is restricted.") vacated on other grounds, *Ayotte v. Planned Parenthood of N. New Eng.*, 126 S. Ct. 961, 163 L. Ed.2nd 812 (2006); *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 916-918 (9th Cir. 2004) ("Physicians and clinics performing abortions are routinely recognized as having standing to bring broad facial challenges to abortion statutes.") *cert. denied*, 544 U.S. 948, 125 S. Ct. 1694, 161 L. Ed.2d 524 (2005))

[73] *Memorandum Decision and Order on Motion to Intervene* [Dkt 54], 6

[74] *Memorandum Decision and Order on Motion to Intervene* [Dkt 54], 6

McCORMACK'S RESPONSE TO MOTION FOR PARTIAL SUMMARY JUDGMENT BY DEFENDANT - Page 19

As McCormack's challenge to the enforcement of Idaho Code § 18–606 *as asserted by Plaintiff in Intervention* clearly extends to future pregnancies, Hiedeman's claim that he will not prosecute her again for her alleged past abortion fails to address the case or controversy related to future abortions. Plaintiff and Plaintiff in Intervention both claim that Idaho Code § 18-606 is facially unconstitutional and Hiedeman continues to dispute that claim.[75]   Hiedeman's motion must be denied because Plaintiff in Intervention's facial challenge to Idaho Code § 18-606 remains judicable.

## CONCLUSION

For all the reasons stated above, McCormack respectfully asks this Court to deny Hiedeman's motion for partial summary judgment.

DATED this 7th day of September, 2012.

RACINE, OLSON, NYE, BUDGE &
BAILEY, CHARTERED

By:   /s/ Richard A. Hearn
RICHARD A. HEARN

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of September, 2012, a copy of the foregoing was served on the CM/ECF Registered Participants through the CM/ECF system as follows:

| | |
|---|---|
| Clay R. Smith | Jack Van Valkenburgh |
| clay.smith@ag.idaho.gov | jvanvalkenburgh@gmail.com |
| colleen.funk@ag.idaho.gov | *Attorney for Plaintiff-in-Intervention* |
| zachp@bannockcounty.us | |
| *Attorney for Defendant* | |

/s/ Richard A. Hearn
RICHARD A. HEARN

---

[75] *See Complaint*, ¶ 71 ("Threatened enforcement of Chapter 6 Idaho Code Title 18 violates the rights of Plaintiffs as guaranteed by the Fourteenth Amendment of the United States Constitution . . .") and Amended Complaint in Intervention, ¶ 80 ("Threatened enforcement of Chapter 6 Idaho Code Title 18 violates the rights of Plaintiff in Intervention's patients including Plaintiff McCormack as guaranteed by the Fourteenth Amendment of the United States Constitution . . .")