LAWRENCE WASDEN
ATTORNEY GENERAL

STEVEN L. OLSEN
Chief of Civil Litigation

CLAY R. SMITH, ISB #6385
Deputy Attorney General
954 W. Jefferson Street, 2nd Floor
P.O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
    Attorneys for Defendant

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| JENNIE LINN MCCORMACK, on behalf of herself and all others similarly situated, and in the interests of the general public,<br><br>    Plaintiff,<br><br>and<br><br>RICHARD HEARN, M.D., on behalf of himself and his patients seeking medical abortions for health reasons prior to fetal viability,<br><br>    Plaintiff-in-Intervention,<br><br>v.<br><br>MARK L. HIEDEMAN, Bannock County Prosecuting Attorney,<br><br>    Defendant. | Case No. 11-CV-00433-BLW<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT BY DEFENDANT** |

REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT BY DEFENDANT-1

## INTRODUCTION

Plaintiff McCormack ("McCormack") opposes the partial summary judgment motion (Dkt. 58) on several grounds:

- Defendant Hiedeman ("Hiedeman") "fails to . . . address the threat of prosecution for aborting future pregnancies McCormack would face if her case was dismissed and the existing preliminary injunction was lifted" or "that his promise never to enforce Idaho Code § 18-606 against McCormack for her alleged illegal abortion in 2010, regardless of the strength of any future evidence which may be subsequently discovered, would be consistent with his duties under Idaho Code § 31-2604(2)." Dkt. 60 at 12. He additionally fails to negate the possibility that a future prosecution against McCormack in connection with her alleged 2010 abortion would not be initiated by the Attorney General or any successor Bannock County prosecuting attorney. Dkt. 60 at 12-13.

- Hiedeman does not address either the capable-of-repetition, yet-evading-review mootness exception or the availability of declaratory relief even if injunctive relief cannot now be awarded. Dkt. 60 at 16-17. McCormack relies exclusively on *Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115 (1973), for the latter proposition.

- The mootness issue with respect to McCormack's claim need not be addressed because "[w]hen one plaintiff"—here Plaintiff-in-Intervention Hearn ("Hearn")—"has standing to challenge the constitutionality of a statute, it is not necessary for a court to consider whether the other named plaintiffs have standing." Dkt. 60 at 18.

None of these arguments has merit.

As to the first set of grounds, McCormack lacks standing to challenge § 18-606 with respect to future pregnancies. She also cannot object to Hiedeman's exercise of his prosecutorial discretion *not* to pursue further criminal proceedings against her based upon

REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT BY DEFENDANT-2

the alleged 2010 abortion.  No reasonable possibility of prosecution by the Attorney General exists given his consistent position that he lacks such authority, while McCormack's invoking the specter of a future prosecution for the alleged 2010 abortion by any successor in office to Hiedeman constitutes nothing more than unvarnished conjecture.  As to the second set of grounds, reliance on the "capable of repetition, yet evading review" mootness exception fails because she lacks standing to challenge § 18-606 on the basis of future pregnancies.  McCormack's reliance on *Super Tire* for the availability of declaratory relief falls prey to the contingencies that accompany any future application of Idaho's abortion statutes, and most especially § 18-606, to her.  Hearn's intervention, finally, does not save McCormack's challenge to prosecution under § 18-606 because she falls outside that class of his patients whose interests he possesses third-party standing to advance.[*]

---

[*] McCormack raises several procedural points that do not warrant extended analysis.  She objects to Hiedeman's declaration because "his 'determination [not to further prosecute McCormack] is final and not subject to reconsideration' is an opinion not in compliance with the requirements of Federal Rule of Civil Procedure 56(e)(1) [*sic*]." Dkt. 60 at 1.  She presumably intended to refer to Fed. R. Civ. P. 56(c)(4).  In any event, Hiedeman's decision to forego further prosecution is a fact, not an opinion.  McCormack also notes that Hiedeman omitted filing a statement of material facts not in dispute pursuant to Dist. Idaho Loc. Civ. R. 7.1(b)(1).  Because the only material fact relevant to the motion's resolution is his non-prosecution determination and because the motion could have been maintained under Fed. R. Civ. P. 12(h)(3), the absence of a Rule 7.1(b)(1) statement is not prejudicial to McCormack.  To address the procedural requirement, Hiedeman has submitted a motion for leave to file the statement.  It substantively replicates his declaration.  Hiedeman does not oppose McCormack's filing, if she so chooses and with leave of this Court, a statement of material facts in dispute as contemplated in Local Rule 7.1(c)(2).  Lastly, she argues that ordinary summary judgment standards apply to disposition of the pending motion. McCormack errs in that regard because the mootness issue raised by Hiedeman and her substantive constitutional challenge are not "so intertwined that resolution of the jurisdictional issue is dependent on factual issues going to the merits" that preclude this Court from "weigh[ing] the evidence to determine whether it has jurisdiction."  *Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005).  Without regard to that distinction, however, the opposing party bears the burden under Rule 56 to identify a material issue of fact through, *inter alia*, "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute."  Fed. R. Civ. P. 56(c)(1)(A) and (B). McCormack, as discussed in more detail below, repairs to speculation and untenable legal positions—not facts—in opposing dismissal.  The only material *fact* before this Court is Hiedeman's determination not to pursue further prosecution.

## ARGUMENT

### I. NO REASONABLE POSSIBILITY EXISTS THAT McCORMACK FACES FUTURE PROSECUTION FOR HER ALLEGED 2010 ABORTION

McCormack's three-pronged argument that, notwithstanding Hiedeman's categorical statement that she will not be prosecuted in connection with the 2010 alleged abortion, she faces a reasonable possibility of such prosecution is a mixture of inaccurate legal reasoning and rank speculation. She thus adopts the rather odd stance that Hiedeman has no authority to make such a statement, relying on Idaho Code § 31-2604(2). Subsection (2) provides that in material part that prosecuting attorneys have the duty "[t]o prosecute all felony criminal actions." The statute nonetheless does not *require* Hiedeman or other prosecuting attorneys to prosecute every felony that they may have probable cause to believe has occurred. Indeed, the opposite is true:

> If the prosecutor has probable cause to believe that the suspect has committed the crime defined by statute, the decision to prosecute and the decision of selecting which charge to file lies within the prosecutor's discretion. . . . "This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review."

*LeBarge v. State*, 116 Idaho 936, 939-40, 782 P.2d 59, 62-63 (Ct. App. 1989); *see also State v. Edmondson*, 113 Idaho 230, 235-36, 743 P.2d 459, 464-65 (1987) ("As LaFave and Israel points out, '[t]he notion that the prosecuting attorney is vested with a broad range of discretion in deciding when to prosecute and when not to is firmly entrenched in American law.' . . . The prosecutor's exercise of discretion as to whom and when to prosecute does not constitute unlawful discrimination.") (citation omitted); *State v. Vetsch,* 101 Idaho 595, 596, 618 P.2d 773, 774 (1980) ("a prosecutor is vested with a wide range of discretion in deciding when and what crimes to prosecute"). McCormack unsurprisingly comes forward with no authority for the contrary and can hardly be heard to complain that Hiedeman lacks the power to grant her wish—non-prosecution for the alleged abortion.

REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT BY DEFENDANT-4

Equally untenable is the contention that McCormack faces potential prosecution from the Attorney General for the alleged 2010 abortion.  The latter has made clear on several occasions that he disclaims any such authority.  *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004) ("[t]he Idaho attorney general denies having authority to enforce any part of the [abortion] statute"); *Idaho Bldg. and Constr. Trades Council v. Wasden*, 834 F. Supp. 2d 1091, 1101 (D. Idaho 2011) ("Wasden responds that (1) county prosecutors, not the Attorney General, initiates criminal proceedings"); *see also Pocatello Educ. Ass'n v. Hiedeman*, 123 Fed. Appx. 765 (9th Cir. 2005) (relying on *Planned Parenthood* to reject Attorney General's contention that he lacked enforcement authority with respect to statute that made violations a misdemeanor).  It beggars common sense to argue that the Attorney General will step to exercise prosecutorial authority which he has consistently denied possessing.

The suggestion that McCormack faces a realistic threat of prosecution for the alleged 2010 abortion from a successor Bannock County prosecutor is mere conjecture. Although the five-year limitation period prescribed for felonies in Idaho Code § 19-402 will not expire until December 2015 and Heideman's term as county prosecutor ends in January 2013, the non-prosecution decision was predicated on the fact that "[m]y *office* has not developed additional evidence since the filing of the referenced declaration and has concluded that no likelihood of doing so exists."  Dkt. 58-2 at ¶ 5 (emphasis added). No reason exists to believe that the county prosecutor's "office" could develop such evidence even if additional efforts were made by his successor to do so.  McCormack, moreover, offers no reason why a successor would revisit Hiedeman's decision.  Under these circumstances, "the allegedly wrongful behavior [can]not reasonably be expected to recur."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).

## II.   McCORMACK LACKS STANDING TO CHALLENGE § 18-606 ON THE BASIS OF FUTURE PREGNANCIES AND IS NOT ENTITLED TO DECLARATORY JUDGMENT RELIEF GIVEN THE CONTINGENCIES ATTENDANT TO THE APPLICATION OF THE ABORTION STATUTES TO HER

McCormack relies upon the possibility of a future pregnancy to negate mootness and observes that "Hiedeman's failure to address [the capable-of-repetition, yet-evading-review] exception to the mootness doctrine in a case challenging an abortion statute is especially surprising considering this exception's importance in *Roe v. Wade*."  Dkt. 60 at 16.  Her reference to *Roe v. Wade*, 410 U.S. 113 (1973), takes on a measure of irony in view of the Ninth Circuit's recent decision affirming this Court's denial of preliminary injunctive relief with respect to her challenge to the Pain Capable Unborn Child Protection Act codified in Title 18, Chapter 5:

> McCormack's testimony that she would seek an abortion if she became pregnant does not suffice to give her standing. It is undisputed that McCormack was not pregnant when she filed this lawsuit. As a result, she does not have standing under any theory articulated in *Roe*.  [¶] In contrast with Jane Roe and akin to McCormack's position, the *Roe* Court found that John and Mary Doe, a married couple who filed a companion complaint along with Roe's, did not have standing. . . . The Does alleged that they were childless, that Mrs. Doe was not pregnant, and that they had been advised that Mrs. Doe should avoid pregnancy for medical and "other highly personal reasons." . . . They alleged that if Mrs. Doe became pregnant, they would want to terminate the pregnancy by abortion. . . . [¶] As with the Does, in McCormack's case there are too many "possibilities that may not take place and all may not combine." . . . Therefore, McCormack does not have standing to challenge PUCPA based on the fact that she was pregnant before filing her civil complaint or based on a possible future pregnancy.

*McCormack v. Hiedeman*, Nos. 11-36010 & 11-36015, 2012 WL 3932735, at *16 (9th Cir. Sept. 11, 2012) (citations omitted).  This Court had reasoned similarly in reaching the same conclusion.  *McCormack v. Hiedeman*, No. 4:11–CV–00397–BLW, 2011 WL 4436548, at *6 (D. Idaho Sept. 23, 2012) ("[l]ike the couple in *Roe,* the possibility that Plaintiff may become pregnant in the future and that she may seek an abortion in southeast Idaho is pure conjecture").

McCormack's lack of standing to challenge Title 18, Chapter 5 necessarily means

that she also lacks standing to challenge § 18-606 or any other provision of Title 18, Chapter 6 on the basis of future pregnancies. The capable-of-repetition, yet-avoiding-review exception accordingly has no relevance. That exception only saves plaintiffs who are pregnant when they commence an abortion statute challenge. *Roe*, 410 U.S. at 125 ("[W]hen, as here, pregnancy is a significant fact in the litigation, the normal 266-day human gestation period is so short that the pregnancy will come to term before the usual appellate process is complete. If that termination makes a case moot, pregnancy litigation seldom will survive much beyond the trial stage, and appellate review will be effectively denied. Our law should not be that rigid."). Any justiciable injury-in-fact suffered by McCormack derives exclusively from the prosecution from her alleged 2010 abortion.

The Supreme Court's decision in *Super Tire* does not counsel a contrary result. The litigation there involved the question whether a New Jersey statute making economic strikers eligible for public assistance was preempted by, *inter alia*, the Labor Management Relations Act of 1947, 29 U.S.C. §§ 141-188. 416 U.S. at 118-19. The plaintiff employers sought injunctive relief to preclude the payment of public funds to then-striking employees by the responsible state official and a declaratory judgment concerning the law's validity. *Id.* Two weeks after the complaint was filed, the strike settled. *Super Tire Eng'g Co. v. McCorkle*, 469 F.2d 911, 913 (3d Cir. 1972), *rev'd*, 416 U.S. 115 (1974). The district court nonetheless reached the controversy's merits and dismissed the complaint under Fed. R. Civ. P. 12(b)(6). 469 F.2d at 913. A majority of a Third Circuit Court of Appeals panel, however, vacated the judgment and remanded for dismissal on the basis of mootness. *Id.* at 922.

The Supreme Court reversed. It held principally that, although the strike's termination eliminated the propriety of injunctive relief, declaratory relief was still possible because of the ongoing effect of the challenged statute on collective bargaining more generally:

REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT BY DEFENDANT-7

> Employees know that if they go out on strike, public funds are available. The petitioners' claim is that this eligibility affects the collective-bargaining relationship, both in the context of a live labor dispute when a collective-bargaining agreement is in process of formulation, and in the ongoing collective relationship, so that the economic balance between labor and management, carefully formulated and preserved by Congress in the federal labor statutes, is altered by the State's beneficent policy toward strikers. It cannot be doubted that the availability of state welfare assistance for striking workers in New Jersey pervades every work stoppage, affects every existing collective-bargaining agreement, and is a factor lurking in the background of every incipient labor contract.

416 U.S. at 124. Importantly for instant purposes, the Court distinguished the controversy from *Oil Workers Union v. Missouri*, 361 U.S. 363 (1960), and *Harris v. Battle*, 348 U.S. 803 (1954):

> In both *Harris* and *Oil Workers* a state statute authorized the Governor to take immediate possession of a public utility in the event of a strike or work stoppage that interfered with the public interest. The seizure was not automatic for every public utility labor dispute. It took effect only upon the exercise of the Governor's discretion. In each case the Court held the controversy to be moot because both the seizure and the strike had terminated prior to the time the case reached this Court. The governmental action challenged was the authority to seize the public utility, and it was clear that a seizure would not recur except in circumstances where (a) there was another strike or stoppage, and (b) in the judgment of the Governor, the public interest required it. The question was thus posed in a situation where the threat of governmental action was two steps removed from reality. This made the recurrence of a seizure so remote and speculative that there was no tangible prejudice to the existing interests of the parties and, therefore, there was a 'want of a subject matter' on which any judgment of this Court could operate.

*Id.* at 122-23. *Super Tire*, in sum, loses its relevance where the governmental activity at issue is "contingent" upon events and discretionary determinations that may, or may not, occur.

Contingencies abound here. They include with reference to a pre-enforcement challenge (1) McCormack's actually becoming pregnant in the future; (2) a determination to abort the pregnancy; and (3) a desire to abort in a manner not authorized by Idaho law. Additional contingencies would arise if McCormack opted to ignore the relevant statutes

REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT BY DEFENDANT-8

and have the abortion: (4) the prosecuting attorney's knowledge of the allegedly unlawful activity; (5) adequate probable cause in the form of admissible evidence to support a prosecution under § 18-606; and (6) the exercise of prosecutorial discretion to initiate a criminal proceeding. The first of these contingencies is dispositive in light of *Roe* and the Court of Appeals' decision in this matter; *i.e.*, the potential application of the Idaho abortion statutes to future pregnancies is too "remote and speculative" (*Super Tire*, 416 U.S. at 123) to warrant declaratory relief. The remaining ones underscore the highly uncertain nature of any enforcement issues with respect to Title 18, Chapters 5 and 6. The *Super Tire* paradigm plainly does not fit the present situation because, given these contingencies, those statutes do not "cast[] what may well be a substantial effect on [McCormack's] interests" through their "continuing and brooding presence." *Super Tire*, 416 U.S. at 122; *see Headwaters, Inc. v. BLM*, 893 F.2d 1012, 1015 (9th Cir. 1989) (declaratory relief unavailable where "[t]he application of the disputed policies to future sales is too uncertain, and too contingent upon the BLM's discretion") (footnote omitted).

### III.   HEARN'S INTERVENTION DOES NOT RENDER McCORMACK'S CHALLENGE TO § 18-606 JUSTICIABLE

McCormack cites no authority for the proposition that the mootness attendant to her claim is somehow eliminated by Hearn's *jus tertii*, or third-party, standing. The reason for her failure to do so is not difficult to discern: Hearn derives such standing only from those of his patients with standing to challenge Idaho abortion statutes. *See Kowalski v. Tesmer*, 543 U.S. 125, 129-30 (2004) (aside from possessing "the appropriate incentive to challenge (or not challenge) governmental action and to do so with the necessary zeal and appropriate presentation[,]" the party asserting third party standing must establish "a 'close' relationship with the person who possesses the right" and "there is a 'hindrance' to the possessor's ability to protect his own interests").

As discussed above, McCormack (even if currently his patient) lacks such standing with respect to future pregnancies. She accordingly falls outside the class of

patients from whom Hearn draws his derivative standing. McCormack is, as a legal matter, a stranger to the claims asserted in his complaint-in-intervention. Hearn also cannot claim third-party standing to advance McCormack's interests with respect to the alleged 2010 abortion because no physician-patient relationship is alleged with respect to the abortion and because she *has* challenged in the state court prosecution—a challenge that negates the "hindrance" element. In sum, Hearn's intervention has no impact on McCormack's claim with respect to the unconstitutionality of § 18-606 or the need to determine whether that claim is now moot.

## CONCLUSION

The motion for partial summary judgment should be granted.

DATED this 14th day of September 2012.

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL

By   */s/ Clay R. Smith*
　　　CLAY R. SMITH
　　　Deputy Attorney General
　　　Attorney for Defendant

REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT BY DEFENDANT-10

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of September 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

| | |
|---|---|
| John B. Ingelstrom | jbi@racinelaw.net |
| Richard A. Hearn | rah@racinelaw.net |
| Jonathan M. Volyn | jmv@racinelaw.net |
| Jack Van Valkenburgh | jvanvalkenburgh@gmail.com |

                                           */s/ Clay R. Smith*
                                                 CLAY R. SMITH
                                                 Deputy Attorney General