LAWRENCE WASDEN
ATTORNEY GENERAL

STEVEN L. OLSEN
Chief of Civil Litigation

CLAY R. SMITH, ISB #6385
Deputy Attorney General
954 W. Jefferson Street, 2nd Floor
P.O. Box 83720
Boise, ID  83720-0010
Telephone:  (208) 334-2400
Facsimile:  (208) 854-8073
      Attorneys for Defendant

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JENNIE LINN MCCORMACK, on behalf of herself and all others similarly situated, and in the interests of the general public,<br><br>      Plaintiff,<br><br>and<br><br>RICHARD HEARN, M.D., on behalf of himself and his patients seeking medical abortions for health reasons prior to fetal viability,<br><br>      Plaintiff-in-Intervention<br><br>v.<br><br>MARK L. HIEDEMAN, Bannock County Prosecuting Attorney,<br><br>      Defendant. | Case No. 11-CV-00433-BLW<br><br>**STATEMENT OF MATERIAL FACTS IN DISPUTE** |

STATEMENT OF MATERIAL FACTS IN DISPUTE

Defendant Mark L. Hiedeman respectfully submits a statement of material facts in dispute pursuant to Dist. Idaho Loc. Civ. R. 7.1(c)(2).

1. Paragraph 9 of Plaintiffs' statement of undisputed facts (Dkt. 71-3) incorrectly identifies the first trimester under Idaho law as the first 12 weeks of pregnancy. The correct period is the first 13 weeks. Idaho Code § 18-604(5). The number of medical abortions performed during the first trimester in 2009 (552) constituted 99.28 percent of all abortions performed in such trimester. Dkt. 79-2 at Attach B.

2. Paragraph 10 of Plaintiffs' statement of undisputed facts (Dkt. 71-3) incorrectly identifies the second trimester under Idaho law as weeks 13 through 24 of pregnancy. The correct period is weeks 14 through, presumptively, 24. Idaho Code § 18-604(12). Medical abortions performed after the first trimester in 2009 (4) constituted .72 percent of all abortions performed in such trimester. Dkt. 79-2 at Attach B.

3. Paragraph 12 of Plaintiffs' statement of undisputed facts (Dkt. 71-3) incorrectly identifies the percentage of abortions performed on unmarried women during 2009 as 80.7. The correct percentage is 73.4

4. Paragraph 20 of Plaintiffs' statement of undisputed facts (Dkt. 71-3) incompletely summarizes the referenced police incident report. McCormack initially denied that a fetus was in the back of her home but later admitted the contrary. Dkt. 21-1 at 7.

5. Paragraphs 22 and 23 of Plaintiffs' statement of undisputed facts (Dkt. 71-3) incompletely summarize the referenced police incident report with reference to the circumstances attendant to McCormack's alleged abortion and statements concerning fetal age.

    a. The report indicates that McCormack stated during subsequent questioning that the "miscarried" fetus was expelled during the early morning of

December 24, 2010, after she had ingested a packet of pills acquired by her sister from an unidentified Internet vendor for the purpose of inducing an abortion. Dkt. 21-1 at 5, 7-8, 17, 19. McCormack stated that she took one pink pill on the same day of their receipt and, after a 48-hour wait, four white pills. *Id.* at 7-8. The pills' acquisition cost was $200 and paid, according to McCormack, by her sister and, according to the sister, by McCormack. *Id.* at 8, 19. McCormack said that, although the sister placed the Internet order, the pills were delivered directly to her in a plain white envelope with no return address approximately five to seven days after her sister found the pills on the Internet. *Id.* McCormack could not identify the type of pills that she ingested and stated that she had not consulted a physician about her pregnancy prior to or following the abortion. *Id.* at 6, 7. The fetal expulsion occurred in the bathroom of McCormack's residence, and she placed the remains in a plastic garbage bag that was placed then into a box. *Id.* at 5, 7, 8. McCormack kept the box in her bedroom for a week before moving it outside. *Id,*

      b.    McCormack identified differing gestational ages at the time of the abortion, ranging from 14 weeks during her initial residence interview (Dkt. 21-3 at 5) and, according to one person to whom she had spoken after the abortion, 25 weeks (*id.* at 18). McCormack's sister stated that, at the time they discussed the need for "some options" to terminate the pregnancy prior to the Internet search and purchase, McCormack identified the gestational age at 12 weeks after admitting to precipitating the abortion. *Id.* at 19.

     6.    Paragraphs 27 through 29 of Plaintiffs' statement of undisputed facts (Dkt. 71-3) contain representations of belief, not facts. Whether McCormack would seek a medical abortion with respect to future pregnancies is speculation because Plaintiffs identify no facts that establish medical abortions are appropriate in all instances. Plaintiffs also identify no facts that establish that McCormack is avoiding sexual relations altogether or utilizing birth control measures. Plaintiffs further identify no facts that establish McCormack faces a threat of prosecution merely because she may have a future

STATEMENT OF MATERIAL FACTS IN DISPUTE -2

abortion in Bannock County, Idaho.

7. Paragraph 33 of Plaintiffs' statement of undisputed facts refers to the prescription of medications approved by the Federal Drug Administration ("FDA") to effect abortions "[i]n the early stage of pregnancy." To the extent that such phrase includes the accepted use of medical abortions beyond, at the most, the nine weeks of pregnancy, a material issue of fact exists. Dkt. 79-1 ¶¶ 4-7.

    a. Recommended protocols for the appropriate use of the abortifacients identified in paragraphs 34 through 37 of Plaintiffs' statement of undisputed facts—mifepristone, misoprostol and methotrexate—have been developed by the American College of Obstetricians and Gynecologists ("ACOG") and the National Abortion Federation ("NAF"). ACOG is the preeminent group of physicians with respect to obstetrical and gynecological procedures, while NAF's membership includes a significant percentage of abortion providers in the United States. The FDA additionally specified protocols for the administration of mifepristone in its final drug label approving use of that drug. These entities' protocols vary with regard to the appropriate period for administration of abortifacients to effect a medical abortion and the procedures to be followed in such administration, but none recommends ordinary use of these abortifacients for medical abortions beyond the ninth week. Dkt. 79-1 ¶¶ 4-7.

    b. Planned Parenthood of the Great Northwest, which operates clinics in Boise and Twins Falls, Idaho, advertises the availability of an "abortion pill"—or medical abortion—"up to 9 weeks after the start of your last menstrual period." *See* http://www.plannedparenthood.org/healthcenter/centerDetails.asp?f2939&a=91810&v=details (Boise Clinic) (last visited Nov. 8, 2012); and http://www.plannedparenthood.org/healthcenter/centerDetails.asp?f=2938&a=91810&v=details#!service=abortion (Twin Falls Clinic) (last visited Nov. 8, 2012).

    c. The virtually exclusive use of medical abortions during the first nine weeks of pregnancy are reflected in induced abortion data collected and reported by the

Idaho Department of Health and Welfare.  Those data establish that during the 2007-2011 period, 98.9 percent of medical abortions were performed during the first nine weeks of pregnancy.  In 2011, 98.8 percent of medical abortions were performed in the first nine weeks of pregnancy.  Dkt. 79-2, Attach. B.

8. Medical abortions during the first nine weeks of pregnancy should be distinguished from second trimester abortions by medical induction.  Dkt. 79-1 ¶ 9.  The latter form of abortion procedure carry a higher risk of complications because of the increased gestational age (*id.*) and, from a practitioner's perspective, requires greater expertise, equipment and clinical support (*id.* ¶¶ 10-12).

9. To the extent that paragraph 38 alleges Hearn's competency to perform medical abortions by virtue of his authorization, as a licensed physician, to prescribe abortifacients.  During Hearn's medical practice, however, his specialty area was internal medicine with sub-specialties in nephrology and rheumatology.  Dkt. 79-3 at 9:11-19; Dkt. 79-4.[1]  He retired from the active practice of medicine in 2003.  *Id.*  He maintains no medical office.  Dkt. 79-3 at 11:17-12:3.  Prior to 2010, he performed no abortions as in his practice as a physician.  *Id.* at 9:20-11:9.  He declined on the basis of his privilege against self-incrimination to answer whether he performed any abortions from 2010 to the present.  *Id.* at 11:10-16.  He has offered no facts to establish that he has associated with a physician in or proximate to Pocatello, Idaho who has the medical expertise and willingness to perform surgical abortions should such a procedure become necessary because of an incomplete or failed medical abortion or abortion by medical induction.

10. Disputed issues of material fact therefore exist concerning:

---

[1] Hearn's deposition in this matter was taken on October 26, 2012.  The transcript was distributed on November 2, 2012.  The 30-day period for review under Fed. R. Civ. P. 30(e) concludes on December 3, 2012.  Hiedeman will submit the verification page and change sheet upon Hearn's completion of those documents.  Only the deposition text and Exhibit 2 to the deposition, Hearn's resume, are included as, respectively, Exhibits C and D to this statement.  *See* Dkt. 79-3 and -4.

STATEMENT OF MATERIAL FACTS IN DISPUTE -4

    a. Whether Hearn has standing to challenge any restriction on his ability to perform medical abortions given the absence of a factual basis to conclude that he possesses the requisite competence or resources to undertake such procedures and/or has associated with a physician in or proximate to Pocatello, Idaho, with medical expertise and willingness to perform surgical abortions should such a procedure become necessary because of an incomplete or failed medical abortion;

    b. Whether Hearn has standing to challenge any restriction on his ability to perform abortions by medical induction given the absence of a factual basis to conclude that he possesses the requisite competence or resources to undertake such procedures and/or has associated with a physician in or proximate to Pocatello, Idaho, with medical expertise and willingness to perform surgical abortions should such a procedure become necessary because of an incomplete or failed abortion by medical induction; and, if Hearn has standing,

    c. Whether restricting his performance of abortions to medical abortions during, at most, the first nine weeks of pregnancy constitutes an undue burden on the access of his patients, if any exist or may exist, to abortion given the small percentage of medical abortions performed after the ninth week, the availability of surgical abortions, and protocols accepted by, *inter alia*, ACOG and NAF recommending that medical abortions be limited to, at most, the first nine weeks. *See* Dkt. 79-1 ¶ 8.

  DATED this 9th day of November 2012.

            STATE OF IDAHO
            OFFICE OF THE ATTORNEY GENERAL


            By */s/ Clay R. Smith*
              CLAY R. SMITH
              Deputy Attorney General
              Attorney for Defendant

STATEMENT OF MATERIAL FACTS IN DISPUTE -5

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of November 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

| | |
|---|---|
| John B. Ingelstrom | jbi@racinelaw.net |
| Richard A. Hearn | rah@racinelaw.net |
| Jonathan M. Volyn | jmv@racinelaw.net |
| Jack Van Valkenburgh | jvanvalkenburgh@gmail.com |

                                        */s/ Clay R. Smith*
                                        CLAY R. SMITH
                                        Deputy Attorney General